Chief Judge Fuld.
In each of these two cases the defendant was tried by the court alone, without a jury, and adjudicated a youthful offender. On appeal, the Appellate Division treated both defendants alike, reversing each judgment on the ground that section 913-g (subd. 3) and section 913-h of the Code of Criminal Procedure,, insofar as they require a youngster between the ages of 16 and 19 to consent to a trial without a jury in order to render him eligible for youthful offender treatment, are unconstitutional. Since Michael A. C.’s trial began after May 20, 1968, the date on which the Supreme Court decided Duncan v. Louisiana (391 U. S. 145) and Jerome C.’s in March, some two months before Duncan, separate treatment of each case is required.
People v. Michael A. C.
On a September day in 1967, a police officer observed the defendant, walking about the parking lot of a large suburban shopping center,, looking into the windows of parked cars. The officer approached the defendant and asked him to identify himself. The latter gave the officer his name and stated that he was 18 years old. As he reached into his pocket to get his draft card or some other means of identification, he pulled out a pack of cigarettes. A small manila envelope, which had apparently been in the pack, fell to the ground—upon which the defendant immediately took off and ran into the nearby Gimbel’s Department Store. The officer picked up the envelope, saw what appeared to be marijuana inside and followed the defendant into the store. Before losing him in the crowd, the officer saw him throw the cigarette package, with four more envelopes, under a clothing counter. He returned to his patrol car and broadcast the description of the defendant; his arrest occurred a short time later.
The defendant was indicted for criminal possession of a dangerous drug in the second degree, a class D felony (Penal Law, former § 220.15), punishable by imprisonment for up to seven *83 years (Penal Law, § 70.00). The District Attorney thereafter, pursuant to the provisions of section 913-g of the Code of Criminal Procedure, recommended that he be accorded youthful offender treatment.[1] The defendant thereupon executed a written form which recited that, if found eligible for adjudication as a youthful offender, he consented “ to be tried without a jury, if that should become necessary ”. The consent thus given by the defendant was, of course, mandated by the statute (Code Grim. Pro., § 913-g) which also provides in section 913-h that, if the defendant is found eligible for youthful offender treatment and pleads not guilty, he is to be tried “ without a jury ”.[2]
The defendant, contending that the provision was unconstitutional, moved in April, 1968, for an order ‘ ‘ impanelling a jury ’ ’. His application was unsuccessful, as was his motion for reargument,, and the case proceeded to trial without a jury on July 25, 1968.[3] The court, as already noted, adjudged the defendant a youthful offender but, on appeal, the Appellate Division reversed the judgment on the ground that the Code *84 provisions mandating a defendant’s consent to a trial without a jury were invalid (32 A D 2d 554).
On May 20, 1968, before the defendant’s trial began, the Supreme Court decided the Duncan case (391 U. S. 145,, supra), holding that the Sixth Amendment as applied to the States through the Fourteenth Amendment requires that defendants charged with ‘ ‘ serious crimes ’ ’ be afforded the right to a trial by jury. Declining to “ settle * * * the exact location of the line between petty offenses and serious crimes ”, the court in Duncan stated that “ [i]t is sufficient for our purposes to hold that a crime punishable by two years in prison is, based on past and contemporary standards in this country, a serious crime and not a petty offense ” (391 U. S., at pp. 161-162). Just 10 days ago, however, the Supreme Court fixed ‘ ‘ the exact location of [that] line” at six months, holding that, “where the possible penalty exceeds six months’ imprisonment”, the offense must be deemed sufficiently “ serious ” to entitle him to a jury trial. (Baldwin v. New York, 399 U. S. 66, 69.) It is urged, therefore, that a youthful offender, such as the defendant before us, who is exposed to the possibility of a four-year reformatory sentence of imprisonment (Penal Law, art. 75; Code Crim. Pro., § 913-m, subd. 1, par. [d]), is entitled to a trial by jury.
The District Attorney takes a different view of the matter. It is his position that the jury trial requirement applies only to ordinary criminal cases and not to special proceedings such as the present. However, if there could have been any doubt that persons tried as youthful offenders are entitled to the fundamental protections accorded defendants in ordinary criminal prosecutions, that doubt was dispelled by the Supreme Court’s recent decision in In re Winship (397 U. S. 358), dealing with juvenile delinquency proceedings. The court there rejected the view that a juvenile’s guilt did not have to be proved beyond a reasonable doubt even though the proceedings are designed “to save the child,” rather than to punish him, and even though the delinquency adjudication is not a criminal conviction. After noting that it had rejected “this justification” in In re Gault (387 U. S. 1), the court went on to say in Winship (397 U. S., at pp. 365-366):
*85 “We made clear in that decision that civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for ' [a] proceeding where the issue is whether the child will be found to be “ delinquent ” and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.’ [387 U. S.] at 36.”
Proceedings brought against youthful offenders are even less entitled to a “ civil ’ ’ label than those against juvenile delinquents. The former are clearly “ criminal” in character and form. The youthful defendant is charged by indictment (or information) with a crime and he is tried in a criminal court, albeit in a part designated as the Youth Part. Moreover, it has long been the rule in youthful offender prosecutions that guilt of the specific acts charged against the defendant must be proven in accordance with the standards applied in a criminal trial. (See People v. Sykes, 22 N Y 2d 159; People v. Shannon, 1 A D 2d 226, 231-232, affd. 2 N Y 2d 792.) In the language of the Code itself (§ 913-m, subd. 2),
‘ ‘ For the purposes of determining the period of the sentence, the criteria to be used, the conditions to be imposed * * * and other such incidents of sentence, the sentences provided * * * shall be governed by the provisions that would be applicable in the case of a sentence imposed upon a conviction for the criminal act for which the person was adjudicated as a youthful offender ’ \
In other words, as the Appellate Division observed in the Shannon case (1 A D 2d, at pp. 231-232), “ Insofar as its immediate effect and consequences are concerned, the adjudication, involving as it does a finding that the defendant is guilty of a crime * * * after a plea of guilty or a trial, and carrying with it the possibility of a commitment * * * and the preservation of the defendant’s finger-print records by the division of identification of the Correction Department * * * has all the essential features of a conviction as that term is ordinarily understood by lawyers and laymen alike. (Cf. Blaufus v. People, 69 N. Y. 107, 109.) ” Certainly, where, as here, a defendant has *86 been indicted for a felony and faces imprisonment for as long a period as four years, his trial, in the light of current constitutional principles, involves the prosecution of a “ serious ” crime even though the judgment is termed a youthful offender adjudication.
It is true, of course, that, upon his indictment in the County Court, the defendant had a right to a jury trial if he so desired and that he “ consented ” to waive that right when he requested consideration for youthful offender treatment. However, although any defendant, including a youthful offender, is free to consent to a trial without a jury if, in fact and reality, he prefers to be so tried—and knowingly waives his constitutional right — this does not mean that a State may demand that such a consent be given as an absolute precondition to affording him the benefits of youthful offender treatment. (See United States v. Jackson, 390 U. S. 570; Nieves v. United States, 280 F. Supp. 994.) In the Jackson case (390 U. S. 570, supra), for instance, the Supreme Court voided a provision in the Federal Kidnapping Act (U. S. Code, tit. 18, § 1201, subd. [a]) which, in effect, rendered only those defendants who insisted on their constitutional right to a jury trial liable to the death penalty and yet provided a maximum sentence of life imprisonment for those who waived that right. Such a provision, the Supreme Court wrote, ‘‘needlessly penalizes the assertion of a constitutional right ” (390 U. S., at p. 583).
The defendant in the case before us would not, it is true, have been subject to the death penalty had he refused to consent to a nonjury trial but he certainly would have been exposed to a considerably longer period of imprisonment than he could receive if prosecuted as a youthful offender. We do not mean to imply by this that the defendant’s consent was necessarily rendered involuntary by the statutory scheme. (Cf. Brady v. United States, 397 U. S. 742; Parker v. North Carolina, 397 U. S. 790.) However, a procedure which offers an individual a reward for waiving a fundamental constitutional right, or imposes a harsher penalty for asserting it, may not be sustained. In point of fact, as the court wrote in Jackson (390 U. S., at p. 583), “the evil in the federal statute is not that it necessarily coerces guilty pleas *87 and jury waivers but simply that it needlessly encourages them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right. ’ ’ (Italics in original.)[4]
In sum, then, sections 913-g and 913-h, insofar as they compel a defendant to consent to a trial without a jury to render him eligible for youthful offender treatment, are unconstitutional.
We would merely add that we find no merit in the defendant’s further contention that the narcotics—upon which the prosecution was grounded—were illegally obtained.
People v. Jerome C.
A robbery occurred in the Village of Hewlett on September 25, 1967. Identified as the robber by eyewitnesses at a lineup, held several weeks after the commission of the crime,, the defendant was indicted for first degree robbery, a class B felony (Penal Law, § 160.15), carrying with it imprisonment for a term not in excess of 25 years (Penal Law, § 70.00). As in Michael A. C.’s case, he was offered and accepted youthful offender treatment and also executed the form, mandated by the Code of Criminal Procedure (§ 913-g, subd. 3), in which he consented to be tried without a jury. His trial was held on March 8 and 12,1968, and the County Court judge who presided adjudged him a youthful offender on June 20. On appeal, the Appellate Division, relying upon its decision in People v. Michael A. G., reversed the judgment—with the statement that “the statutory require *88 ment of consent to a trial without a jury for eligibility for youthful offender treatment * * * is unconstitutional” — and directed ‘'a new trial before a jury ” (32 A D 2d 840).
That determination, of course, would have been correct had it not been for the fact that the defendant’s trial antedated, by some two months, the Supreme Court’s decision in Duncan (391 U. S. 145, supra). In DeStefano v. Woods (392 U. S. 631), the court held that Duncan “ should receive only prospective application ” (p. 633), declaring that it would “not reverse state convictions for failure to grant jury trial where trials began prior to May 20, 1968, the date of [its] decision in Duncan v. Louisiana ” (p. 635). Consequently, since Jerome was tried in March of 1968, he was not entitled to a jury trial. (See People v. Ruiz, 24 N Y 2d 926; DeBacker v. Brainard, 396 U. S. 28, 30.)[5]
Nor does the defendant’s further point, that he was deprived of the right—accorded him by Wade v. United States (388 TJ. S. 218)— to counsel at the pre-indictment lineup,, require that the adjudication be set aside and the Appellate Division order affirmed. The defendant was positively identified in court by the victim of the robbery and another witness, both of whom had had ample opportunity to observe him when he committed the crime. Some three weeks later, he was picked out of a lineup by those eyewitnesses who viewed him, through a one-way mirror, from an adjoining room. Although the defendant’s attorney was with him, the police refused to allow him to be in the room from which the witnesses observed his client. It is sufficient to say that, on this matter, we agree with the trial judge and the Appellate Division that the in-court identifications were not influenced or affected by the lineup and that, if any error or impropriety was committed in the procedure adopted, it ‘‘ may be disregarded under section 542 of the Code of Criminal Procedure ” (32 A D 2d 840).
In People v. Michael A. C., the order appealed from should be affirmed.
*89 In People v. Jerome C., the order appealed from should be reversed and the judgment of the Nassau County Court adjudicating the defendant a youthful offender should be reinstated.

. Section 913-g of the Code reads, in part, as follows:
“ 1. In any case where a grand jury has found an indictment and it shall appear that the defendant is a youth, the grand jury or the district attorney may recommend to the court to which the indictment was returned * * * that the defendant be investigated for the purpose of determining whether he is eligible to be adjudged a youthful offender.
« ft ft
“3. If the court approves the recommendation of the grand jury or the district attorney, or, if the court on its own motion determines that the defendant should be investigated hereunder and the defendant consents to physical and mental examinations, if deemed necessary, and to investigation and questioning, and to a trial without a jury, should a trial be had, the indictment * * * shall be held in abeyance ”. (Emphasis supplied.)

. Section 913-h provides that
“ In the event the defendant enters a plea of ‘ not guilty ’ * * * the defendant shall be tried for the purpose of determining whether he shall be adjudged a youthful offender. The trial shall be held by the court without a jury.”

. The reargument motion was prompted by the decision of the Appellate Division for the First Department—in Matter of Saunders v. Lupiano (30 A D 2d 803, 804) — that Duncan v. Louisiana (391 U. S. 145, supra) rendered the waiver of a jury trial “unconstitutionally impermissible” as a precondition to youthful offender treatment. Some time later, the Appellate Division for the Fourth Department reached the same result in People v. Sawyer (33 A D 2d 242).

. Even before the Jackson case, a three-judge panel in the Southern District of New York had decided that a Federal statutory requirement—similar to that imposed by the provisions challenged in the present case — that a youth waive his Sixth Amendment right to a jury trial in order to obtain the benefits of treatment as a juvenile delinquent, was unconstitutional. (See Nieves v. United States, 280 F. Supp. 994, supra.) In rejecting the Government’s argument that the defendant’s right to refuse such treatment preserved the validity of the statute, the court wrote: “ Where a reward is held out to an individual for the waiver of a constitutional right, or a greater threat posed for choosing to assert it, any waiver may be said to have been extracted in an impermissible manner. If the individual asserts his right and thereby encounters harsher treatment than he would otherwise, such treatment may be struck down as a penalty ” (280 F. Supp., at p. 1001).

. The circumstance that in. the present case, the adjudication was rendered after Duncan had been decided, whereas in People v. Ruiz (24 N Y 2d 926, supra) both the trial and the adjudication occurred prior to Duncan, does not effectively differentiate it from Ruiz or require a different result. (Cf. People v. Boone, 22 N Y 2d 476, 480, 486.) The operative and critical fact is that in this case the trial began, and all the evidence was received, before the Supreme Court decided Duncan.