269 So.2d 155

**Warren FLIPPO**

v.

**STATE.**

8 Div. 263.

Court of Criminal Appeals of Alabama.
Aug. 15, 1972.
Rehearing Denied Sept. 12, 1972.

J. Terry Huffstutler, Jr., Guntersville, for appellant.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

**HARRIS, Judge.**

Appellant was indicted for the offense of grand larceny. Omitting the formal parts, the indictment charges "that before the finding of this indictment Warren Flippo, whose name to the Grand Jury is otherwise unknown, feloniously took and carried away twelve (12) hogs, of the value of $200.00, the property of Wannie Clary, against the peace and dignity of the State of Alabama."

He filed a plea of misnomer alleging that his true name is Warren Flippo, Jr., and not Warren Flippo as set forth in the indictment. The State demurred on the ground that "Jr." was not material to the indictment and the court sustained the demurrer. There was no error in sustaining the State's demurrer. Taylor v. State, 282 Ala. 567, 213 So.2d 566, Certiorari denied 393 U.S. 1102, 89 S.Ct. 903, 21 L.Ed.2d 795.

Appellant filed a motion to quash the indictment for failure to aver that the property allegedly stolen was the *personal* property of the owner, Wannie Clary. The court overruled the motion to quash.

Our grand larceny statute, as last amended, provides, in pertinent part, as follows:

"Any person who steals any horse, mare, gelding, colt, filly, mule, jack, jennet; * * * and any person who steals any personal property, except any cow or animal of the cow kind, other than hereinbefore enumerated, of the value of twenty-five dollars, or more, * * * shall be guilty of grand larceny, and, on conviction, shall be imprisoned in the penitentiary for not less than one nor more than ten years." Title 14, Section 331, Code of Alabama 1940 Pocket Parts.

A "hog" is not among the animals enumerated in the above section but is covered by "any personal property, * * * of the value of twenty-five dollars, or more, * *" contained in said section.

The prescribed form for a grand larceny indictment is Form 66, Section 259, Title 15, Code of Alabama 1940, and in each of four forms there suggested the words "personal property of" the owner appears.

The indictment in the instant case is defective for failure to aver that the hogs were "the personal property of Wannie Clary". This defect does not render the indictment void. The constitutional requirement that the accused be made aware of the nature and cause of the charge against him was met. The proper way, however, to reach defects in an indictment is by demurrer and not by motion to quash. Duncan v. State, 278 Ala. 145, 176 So.2d 840; Boulo v. State, 49 Ala. 22; Daniel v. State, 149 Ala. 44, 43 So. 22.

In White v. State, 74 Ala. 31, Chief Justice Brickell, speaking for the Court said:

"There was no error in the action of the Circuit Court in refusing to quash the indictment upon the motion of the appellant. The entertaining of a motion to quash is, as a general rule, in the sound discretion of the lower court, and not revisable by this court on appeal.—State v. Jones, 5 Ala. 666. In Nixon v. State, 68 Ala. 535, it was left undecided by the court, whether or not there might be cases in which a refusal to quash an indictment upon motion would be revisable; but we

are clearly of opinion that the present is not such a case."

Appellant, then seventeen (17) years of age, pleaded guilty to the indictment and received a sentence of eighteen (18) months in the penitentiary.

Within the time allowed by law, appellant filed a motion for a new trial and for the first time called the court's attention to Act No. 335, approved February 10, 1972, which is referred to in brief as the "Youthful Offender Act". Appellant was indicted on January 6, 1972, some thirty-six (36) days *before* Act No. 335 was signed into law by the Governor, and he pleaded guilty to the indictment on February 23, 1972, some thirteen (13) days *after* the approval of the Act. The Reporter will set out this Act in full in the report of this case. [See Appendix.]

Upon the hearing of the motion for a new trial involving the Act in question the trial judge stated that appellant would probably be entitled to the benefits of Act No. 335, and he would grant him a new trial if the act was constitutional. He went on, however, to hold the act unconstitutional saying, in part, as follows:

"A review of the foregoing statute reveals there are no standards and there is no way for the statute to be applied to all those it affects in even a roughful equal manner. Past experience teaches us that some judges would make much use of the Act and some would use it infrequently, if at all.

"The Act could be used to discriminate on the basis of race, or economic status, or any other capricious manner. The statute is subject to and would invite arbitrary and capricious treatment. We believe it's impossible for the judiciary to apply the statute in a reasonable, natural, even-handed manner. This being the case, the statute must fall. The only alternative would be for the Appellant Courts of this State to imply and write into the statute reasonable standards for application of the Act, which would constitute the enactment of legislation by the judiciary. The

judiciary in this State has refused consistently to do this.

"The Court, therefore, holds the Youthful Offender Act is unconstitutional; first, because of the jury trial provisions. This in itself is sufficient to cause the entire statute to be invalid, as the removal of the jury trial provision would place in effect an entirely different plan or scheme than that which the Legislature had in mind; and, in addition, the failure of the Legislature to provide reasonable standards for application of the Act is another reason why the Act must fall. The foregoing is the join(t) opinion of both judges of this circuit, and is adopted by the undersigned in this case.

"Although the Court will deny the defendant's motion for a new trial because of the unconstitutionality of the Act, upon re-consideration, the Court is of the opinion that the defendant's sentence should be reduced to one year and one day imprisonment in the penitentiary, inasmuch as an adult who also participated in the crime involved in this case received a more favorable sentence.

"It is, therefore, CONSIDERED, ORDERED AND ADJUDGED by the Court as follows:

"1. That the said 'Youthful Offenders Act' (House Bill 281, approved February 10, 1972) is unconstitutional for the reasons set out above, and that the defendant's motion for a new trial is denied solely for and on account of the unconstitutionality of the Act and for no other reason.

"2. That in accordance with the above opinion the Court reduces the defendant's term of imprisonment in the penitentiary from 18 months to one year and one day, and the final judgment of the Court is so amended.

"Done this the 17 day of April, 1972.

"/s/ Clark E. Johnson, Jr.
Circuit Judge of the 27th
Judicial Circuit"

The State urges us to strike down Act No. 335 as being unconstitutional for two reasons:

1. The Act requires a youthful offender to waive his constitutional right to a trial by jury in order to be eligible for the substantial benefits afforded by the Act, and

2. the Act fails to provide any standards, pre-requisites, or guidelines to govern the trial courts in determining which defendants should receive these benefits and who should be denied such benefits.

Just as strongly appellant insists the Act is free of any constitutional taint and is but an expression of the warm solicitude the Legislature has for wayward minors and was adopted with the intent to benefit youth who makes his first mistake, and that he should not be branded as a criminal therefor; and the guidelines should be those used to determine probation.

We are thus presented with an important constitutional question.

Act No. 335 was borrowed, body and soul, from the "Model Sentencing Act" proposed and recommended by the Advisory Council of Judges of the National Council on Crime and Delinquency. The "Model Sentencing Act" was patterned, in large measure, from the State of New York's Youthful Offender Act and particularly Sections 913–g and 913–h of the New York Code of Criminal Procedure in force and effect prior to September 1, 1971. In 1971, the New York Legislature materially changed the Youthful Offender process. CPL Article 720.10–720.35. Act No. 335 is also similar in many respects to the Federal Juvenile Delinquency Act, 18 U.S. C.A. Sections 5031–5037.

The age bracket for youthful offenders under the New York law is 16 to under 19 and under the Federal Juvenile Delinquency Act to anyone who has not attained his eighteenth birthday. Act No. 335 is applicable to any person charged with a crime committed in his minority, involving moral turpitude, but not disposed of by juvenile proceedings. Hence, the age bracket is over 16 and under 21 years, laying aside local statutes.

In declaring Act No. 335 unconstitutional because of the jury trial waiver provision the trial court said:

"The Court notes that the Youthful Offender Act was taken from the 'Model Sentencing Act' as proposed and recommended by the Advisory Council of Judges of the National Council on Crime and Delinquency, which, in turn, is patterned substantially on a Legislative Act of the State of New York in the case of People vs Michael A. C. (Anonymous), 27 N.Y.2d 79, 313 N.Y.S.2d 695, 261 N.E.2d 620, July 2, 1970, held that the sections of the Act relating to waiver of a jury trial were unconstitutional. This Court fully agrees with and supports the reasoning of the New York Court, and adopts the reasoning and arguments of that Court with reference to the jury trial provision of the Act. Also, when an act is adopted in this State patterned after an act in another State, the Court decisions of such other State construing the act are also adopted."

In People v. Michael A. C. (Anonymous), 27 N.Y.2d 79, 313 N.Y.S.2d 695, 261 N.E. 2d 620, the Court of Appeals of New York said:

" * * * However, if there could have been any doubt that persons tried as youthful offenders are entitled to the fundamental protections accorded defendants in ordinary criminal prosecutions, that doubt was dispelled by the Supreme Court's recent decision in In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, dealing with juvenile delinquency proceedings. The court there rejected the view that a juvenile's guilt did not have to be proved beyond a reasonable doubt even though the proceedings are design-

ed 'to save the child,' rather than to punish him, and even though the delinquency adjudication is not a criminal conviction. After noting that it had rejected 'this justification' in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L. Ed.2d 527, the court went on to say in *Winship* (397 U.S., at pp. 365–366, 90 S.Ct. [1068], at 1073):

> " 'We made clear in that decision that civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for "[a] proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution." [387 U.S.] at 36, 87 S.Ct. 1428.' "

And further

"Proceedings brought against youthful offenders are even less entitled to a 'civil' label than those against juvenile delinquents. The former are clearly 'criminal' in character and form. The youthful defendant is charged by indictment (or information) with a crime and he is tried in a criminal court, albeit in a part designated as the Youth Part. Moreover, it has long been the rule in youthful offender prosecutions that guilt of the specific acts charged against the defendant must be proven in accordance with the standards applied in a criminal trial."

(citing cases).

\* \* \* \* \* \*

"It is true, of course, that, upon his indictment in the County Court, the defendant had a right to a jury trial if he so desired and that he 'consented' to waive that right when he requested consideration for youthful offender treatment. However, although any defendant, including a youthful offender, is free to consent to a trial without a jury if, in fact and reality, he prefers to be so tried—and knowingly waives his con-

stitutional right—this does not mean that a State may demand that such a consent be given as an absolute precondition to affording him the benefits of youthful offender treatment. (See United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138; Nieves v. United States, D.C., 280 F.Supp. 994.) In the *Jackson* case (390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, *supra*), for instance, the Supreme Court voided a provision in the Federal Kidnapping Act (U.S.Code, tit. 18, § 1201, subd. [a]) which, in effect, rendered only those defendants who insisted on their constitutional right to a jury trial liable to the death penalty and yet provided ⸬ maximum sentence of life imprisonment for those who waived that right. Such a provision, the Supreme Court wrote, 'needlessly penalizes the assertion of a constitutional right' (390 U.S., at p. 583, 88 S.Ct. [1209], at p. 1217)."

And further

" \* \* \* However, a procedure which offers an individual a reward for waiving a fundamental constitutional right, or imposes a harsher penalty for asserting it, may not be sustained. In point of fact, as the court wrote in *Jackson* (390 U.S., at p. 583, 88 S.Ct. [1209], at p. 1217), [holding a portion of the Federal Kidnapping Act unconstitutional providing a maximum penalty of life imprisonment if jury trial waived] 'the evil in the federal statute is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right.'

"In sum, then, sections 913–g and 913– h, insofar as they compel a defendant to consent to a trial without a jury to render him eligible for youthful offender treatment, are unconstitutional."

The New York Court of Appeals noted that before the *Jackson* case, a three-judge

panel in the Southern District of New York had decided that a Federal statutory requirement that a youth waive his Sixth Amendment right to a jury trial in order to obtain the benefits of treatment as a juvenile delinquent, was unconstitutional. Nieves v. United States, 280 F.Supp. 994. In *Nieves,* the court wrote:

"* * * Where a reward is held out to an individual for the waiver of a constitutional right, or a greater threat posed for choosing to assert it, any waiver may be said to have been extracted in an impermissible manner. If the individual asserts his right and thereby encounters harsher treatment than he would otherwise, such treatment may be struck down as a penalty. * * *"

In the light of the above it appears abundantly clear that the Court of Appeals of New York treats the jury trial waiver provisions in the youthful offender act the same as the three-judge panel in *Nieves* so far as the Sixth Amendment right to a jury trial exists in the Federal Juvenile Delinquency Act.

Section 5033 of the Federal Juvenile Delinquency Statute, Title 18, U.S.C.A. Chapter 403, provides:

"District Courts of the United States shall have jurisdiction of proceedings against juvenile delinquents. For such purposes, the court may be convened at any time and place within the district, in chambers or otherwise. The proceeding shall be without a jury. The consent required to be given by the juvenile shall be given by him in writing before a Judge of the District Court of the United States having cognizance of the alleged violation, who shall fully apprise the juvenile of his rights and of the consequences of such consent. Such consent shall be deemed a waiver of a trial by jury."

In Cotton v. United States, 446 F.2d 107, the Court of Appeals, Eighth Circuit, upheld the constitutionality of the above quoted section of the Federal Juvenile Delinquency Act. In *Cotton,* the Court said:

"2. The constitutionality of the Act.

Finally, defendant contends that § 5033 violates the Sixth Amendment right to trial by jury and that the only case which squarely considers the question, Nieves v. United States, 280 F.Supp. 994 (S.D.N.Y.1968), held the statute unconstitutional. He argues that In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966), is analogous in that it considers juvenile rights generally and that that decision supports Nieves and would require a similar holding here. We find this argument unacceptable in light of McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), which held 'that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement.'

"[2] The federal statute, § 5033, does not impair any right to a jury trial. It affords a juvenile an opportunity to choose his forum. The juvenile who does intelligently consent does so with full realization that he is foregoing a trial by jury. In the instant case, defendant at the time represented by competent counsel in open court consented to being proceeded against as a juvenile delinquent. He signed the statement and his attorney witnessed it.

\* \* \* \* \* \*

"The only way we could reverse this case would be to hold the Federal Juvenile Delinquency Act unconstitutional, and this we cannot do."

In McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647, the Supreme Court of the United States had for review the issue of whether the due process clause of the Fourteenth Amendment affords the right to trial by jury in state juvenile delinquency proceedings. This case involved the statutes of Pennsylvania and North Carolina consolidated into a single appeal. A majority of the court, although not agreeing upon an opinion,

agreed that the due process clause of the Fourteenth Amendment did not assure the right to a jury trial in the adjudicative phase of a state juvenile delinquency proceeding.

In *McKeiver* the Court said:

"We must recognize, as the Court has recognized before, that the fond and idealistic hopes of the juvenile court proponents and early reformers of three generations ago have not been realized. The devastating commentary upon the system's failures as a whole, contained in the President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime 7–9 (1967), reveals the depth of disappointment in what has been accomplished. Too often the juvenile court judge falls far short of that stalwart, protective, and communicating figure the system envisaged. The community's unwillingness to provide people and facilities and to be concerned, the insufficiency of time devoted, the scarcity of professional help, the inadequacy of dispositional alternatives, and our general lack of knowledge all contribute to dissatisfaction with the experiment.

"The Task Force Report, however, also said, id., at 7, 'To say that juvenile courts have failed to achieve their goals is to say no more than what is true of criminal courts in the United States. But failure is most striking when hopes are highest.'

"[7] Despite all these disappointments, all these failures, and all these shortcomings, *we conclude that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement.* * * *" (emphasis added).

\* \* \* \* \* \*

"[11] 13. Finally, the arguments advanced by the juveniles here are, of course, the identical arguments that underlie the demand for the jury trial for criminal proceedings. The arguments

necessarily equate the juvenile proceeding—or at least the adjudicative phase of it—with the criminal trial. Whether they should be so equated is our issue. Concern about the inapplicability of exclusionary and other rules of evidence, about the juvenile court judge's possible awareness of the juvenile's prior record and of the contents of the social file; about repeated appearances of the same familiar witnesses in the persons of juvenile and probation officers and social workers—all to the effect that this will create the likelihood of pre-judgment—chooses to ignore, it seems to us, every aspect of fairness, of concern, of sympathy, and of paternal attention that the juvenile court system contemplates.

"If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it."

The right of trial by jury has been told and retold (and in recent years greatly expanded) in this country dating from Colonial times and it is not necessary to here review the history of this constitutional right. The question of "waiver" of trial by jury in non-capital cases is no longer an open question in this State. See Singleton v. State, 288 Ala. 519, 262 So.2d 768, decided by our Supreme Court in 1971.

In *Singleton*, the Supreme Court posed the question:

"Can a defendant charged with a felony, not capital, waive a jury trial, enter a plea of not guilty and be tried by a circuit judge without a jury?"

The Court then answered the question, saying:

"The view that the accused cannot waive a trial by jury in criminal cases on the ground that to allow such waiver would be violative of public policy seems to be unsound. We inferentially said this

in *Kirk* (Kirk v. State, 247 Ala. 43, 22 So.2d 431). We now say it directly."

In Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, the Supreme Court said:

" * * * Our conclusion is that in the American States, as in the federal judicial system, a general grant of jury trial for serious offenses is a fundamental right, essential for preventing miscarriages of justice and for assuring that fair trials are provided for all defendants. We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury. *Thus we hold no constitutional doubts about the practices, common in both federal and state courts, of accepting waivers of jury trial and prosecuting petty crimes without extending a right to jury trial.* However, the fact is that in most places more trials for serious crimes are to juries than to a court alone; a great many defendants prefer the judgment of a jury to that of a court. Even where defendants are satisfied with bench trials, the right to a jury trial very likely serves its intended purpose of making judicial or prosecutorial unfairness less likely." (emphasis added).

We hold Act No. 335 to be constitutional on its face. We also hold this Act is not invalid because the Legislature failed to spell out guidelines or standards for the application and enforcement of the Act.

The Act is innovational to the sentencing process that has long existed in Alabama and is designed to confer substantial benefits on a segment of youth who have heretofore been treated as adults in the enforcement of our criminal laws. It has been said that "want of experience maketh apt unto innovations", but want of experience should be challenging, and not chilling, to trial judges as they approach the application and enforcement of this new law.

The courts of New York have been applying Youthful Offender laws, in one form or another, since 1944. These courts characterize this type legislation as humane and progressive, adopted with the intent to benefit youth who makes his first mistake and that he should not be branded a criminal therefor. The purpose is to grant power to the court to determine whether a youth charged with a crime should be afforded various methods of rehabilitation and such determination is provided for as a privilege and not as a matter of right. These courts hold that once a defendant has consented to the proceedings and has been adjudged eligible to be treated as a youthful offender, all proceedings thereafter are in answer to the *charge of being a youthful offender,* and not to the original indictment (or information), and the trial is to the Court without a jury.

Prior to the commencement of any youthful offender proceeding, Act No. 335 requires obtaining the defendant's consent to be tried without a jury. By its very terms an option is open to the defendant to proceed as an adult and to be tried by a jury, or to waive his right to a jury trial by consenting to the adjudication at court sessions separate from those for adults charged with crime. This procedure provides an enlightened and beneficial alternative to criminal prosecution. The option is his and his alone but the trial court is clothed with a broad discretion to determine, after investigation, whether the accused should be tried as a youthful offender or stand trial on the original indictment as an adult in an ordinary criminal prosecution.

Notwithstanding the trial court's skepticism that trial judges may administer this Act by applying different standards and procedures, or ignore it altogether, does not persuade us that the Act is unconstitutional. The Act can be made workable in order to carry out the legislative intent manifest in the very language thereof.

The cause is due to be reversed and remanded.

Reversed and remanded.

CATES, P. J., ALMON and TYSON, JJ., concur.

## APPENDIX

## "CHAPTER 11A

### YOUTHFUL OFFENDERS.

§ 266(1). Investigation by court; consent of minor to examination and trial without jury; arraignment as youthful offender.—A person charged with a crime which was committed in his minority but was not disposed of in juvenile court and which involves moral turpitude or is subject to a sentence of commitment for one year or more shall—and, if charged with a lesser crime, may—be investigated and examined by the court to determine whether he ·should be tried as a youthful offender, provided he consents to such examination and to trial without a jury where trial by jury would otherwise be available to him. If the defendant consents and the court so decides, no further action shall be taken on the indictment or information unless otherwise ordered by the court as herein provided. After such investigation and examination, the court in its discretion may direct that the defendant be arraigned as a youthful offender, and no further action shall be taken on the indictment or information; or the court may decide that the defendant shall not be arraigned as a youthful offender, whereupon the indictment or information shall be deemed filed. (1971, 3rd Ex.Sess., No. 335, § 1, appvd. Feb. 10, 1972.)

§ 266(2). Conduct of trial.—If the defendant does not plead guilty, the trial of the charge as a youthful offender· shall be before the judge without a jury. The trial of youthful offenders and proceedings involving them shall be conducted at court sessions separate from those for adults charged with crime. (1971, 3rd Ex.Sess., No. 335, § 2, appvd. Feb. 10, 1972.)

§ 266(3). Inadmissibility of statements, admission, etc., as evidence; consideration at time of sentencing.—No statement, admission, or confession made by a defendant to the court or to any officer thereof during the examination and investigation referred to in 266(1) of this title shall be admissible as evidence against him or his interest, except that the court may take such statement, admission, or confession into consideration at the time of sentencing, after the defendant has been found guilty of a crime or adjudged a youthful offender. (1971, 3rd Ex.Sess., No. 335, § 3, appvd. Feb. 10, 1972.)

§ 266(4). Disposition of youthful offender.—If a person is adjudged a youthful offender and the underlying charge is a felony, the court shall (a) suspend the imposition or execution of sentence with or without probation, or (b) place the defendant on probation for a period not to exceed three years, or (c) impose a fine as provided by law for the offense with or without probation or commitment, or (d) commit the defendant to the custody of the director of the department of correction for a term of three years or a lesser term. Where a sentence of fine is not otherwise authorized by law, in lieu of or in addition to any of the dispositions authorized in this paragraph the court may impose a fine of not more than $1000. In imposing a fine the court may authorize its payment in installments. In placing a defendant on probation the court shall direct that he be placed under the supervision of the appropriate probation agency. If the underlying charge is a misdemeanor, a person adjudged a youthful offender may be given correctional treatment as now provided by law for such misdemeanor. (1971, 3rd Ex. Sess., No. 335, § 4, appvd. Feb. 10, 1972.)

§ 266(5). Investigations for court by probation officers.—It shall be the duty of all probation officers of the state of Alabama to make such investigations for the court as requested by the court for the pur-

pose of determining whether or not the person shall be charged as a youthful offender. (1971, 3rd Ex.Sess., No. 335, § 5, appvd. Feb. 10, 1972.)

§ 266(6). Effect of determination as youthful offender.—No determination made under the provisions of this chapter shall disqualify any youth for public office or public employment, or operate as a forfeiture of any right or privilege, or make him ineligible to receive any license granted by public authority; and such determination shall not be deemed a conviction of crime except that, if he is subsequently convicted of crime, the prior adjudication as youthful offender shall be considered. The fingerprints and photographs and other records of a person adjudged a youthful offender shall not be open to public inspection, except that the court may, in its discretion, permit the inspection of papers or records. (1971, 3rd Ex.Sess., No. 335, § 6, appvd. Feb. 10, 1972.)"