476 So.2d 626 (1983)
Robert Lee CRITTENDEN alias Bean Crittenden
v.
STATE.
4 Div. 180.
Court of Criminal Appeals of Alabama.
November 29, 1983.
On Return to Remand January 8, 1985.
Rehearing Denied February 12, 1985.
*627 Allen Edward Cook, Andalusia, for appellant.
Charles A. Graddick, Atty. Gen., and Janet A. Wade, Asst. Atty. Gen., for appellee.
TAYLOR, Judge.
Appellant was convicted of attempted rape in the first degree and sentenced to *628 ten years and one day; he appeals, asserting three grounds.

I
Appellant contends that he was erroneously prevented from testifying as to the details of former difficulty between himself and the mother of the victim in this case. Appellant and the victim's mother had once lived together but had separated some months before the warrant was taken out. The purpose of this proposed testimony was to prove that the victim's mother bore ill-will toward the appellant.
The arrest warrant was taken out after a social worker took the victim, a nine-year-old girl to a doctor, who determined that she was infected with gonorrhea. The doctor testified that the most common way to become infected with gonorrhea was through sexual contact and that females might be carriers of the venereal disease for an indefinite period without the appearance of any symptoms.
The record indicates that the appellant did testify as to the cohabitation with Sara Frances Jackson, that he and she had quarreled and separated. In addition it was shown that all this happened before Miss Jackson sought a warrant against appellant. Appellant further testified that the victim's mother threatened him at the time he separated, saying she was going to get him in some way or another; he concluded that she brought these charges in an attempt to get back at him. The court only disallowed testimony concerning the details of their quarrels.
In deciding this issue there are several controlling authorities.
In Eddy v. State, 352 So.2d 1161 (Ala.Cr. App.1977), testimony was admitted that there had been fights between the defendant and the victim on previous occasions. The court, however, declined to allow the state to go into details concerning these fights. C. Gamble, McElroy's Alabama Evidence, § 45.06(1) (3d ed. 1977) states:
"In a charge of crime, the state may prove former acts of hostility by the accused towards the victim for the purpose of showing motive in the accused and malice, if malice is an element of the offense. If the evidence in a charge of homicide or assault warrants a finding of accused's justification under the right of self-defense, he may prove former acts of hostility by the victim towards the accused as tending to show a motive in the victim to aggress against the accused and as tending to show apprehension of peril by the accused. When the act of hostility consists of a former difficulty, such as a quarrel or a fight between the accused and the victim, uncertainty prevails with respect to the extent to which the facts of such former difficulty or quarrel may be proven. The general rule in this area, however, is that the moving party may show the fact, but not the details, of the former difficulty." (emphasis supplied)
The trial judge is vested with wide discretion when deciding how far counsel may go in eliciting "details of a former difficulty"; he should be allowed to determine when to let counsel run and when to rein him in. See, Padgett v. State, 49 Ala.App. 130, 269 So.2d 147 (Ala.Cr.App.), cert. denied, 49 Ala.App. 138, 269 So.2d 155 (1972); Davis v. State, 331 So.2d 813 (Ala.Cr.App.1976).
In this instance it appears that the points sought to be made by the appellant were in fact testified to by him. See, Hill v. State, 366 So.2d 296 (Ala.Cr.App.1978), aff'd, 366 So.2d 318 (Ala.1979). The court did not err in its decision to circumscribe the testimony concerning the details of the quarrel.

II
Appellant contends that the court erred in not compelling the state to elect between Count I and Count II of the indictment. The appellant was charged with sexual abuse and with attempted rape. This issue was dealt with by our court, speaking through Judge Tyson, in Wilcox v. State, 401 So.2d 789 (Ala.Cr.App.1980), aff'd, 401 So.2d 794 (Ala.1981), wherein the case of *629 Orr v. State, 107 Ala. 35, 18 So. 142 (1895), was quoted:
"A careful solicitor should always frame the indictment with as many counts as may be necessary to meet the different phases the evidence may assume. Embezzlement and larceny, burglary and larceny, larceny and receiving stolen property, and offenses of like character may properly be joined in separate counts in the same indictment."
Judge Tyson continued in Wilcox:
"As noted by our Supreme Court in Deason v. State, 363 So.2d 1001 (Ala. 1978), `[T]his is permissible under our statute [§ 15-8-52, Code of Alabama 1975] ... and places no obligation upon the prosecution to elect beforehand which of those offenses it intends to prove.' This situation is to be distinguished from one in which the indictment alleges one offense and different instances of that offense are made the subject of proof by the prosecution; in such instances the court should compel election:
`The court will not exercise its power to compel an election unless it appears either from the indictment or the evidence that an attempt is made to convict the accused of two or more offenses growing out of separate and distinct transactions. Mayo v. State, 30 Ala. 32; Wooster v. State, 55 Ala. 217, Butler v. State, 91 Ala. 87, 9 So. 191.' Brooms v. State, 197 Ala. 419, 425, 73 So. 35, 37 (1916) (Mayfield, J. concurring); Deason v. State, supra."

Our Supreme Court held in Flournoy v. State, 251 Ala. 285, 37 So.2d 223 (1948), quoting Mayo v. State, 30 Ala. 32 (1857), that:
"Where two distinct felonies are charged in different counts, it is not a matter of legal right pertaining to the accused, that the state should be compelled to elect for which one of the offenses it will prosecute; nor will the court compel such election, where the two counts are joined, in good faith, for the purpose of meeting a single offense. It is a practice sanctioned by common custom, and by the law, to charge a felony in different ways, in different counts of the indictment, so as to provide for the different phases which the evidence may present upon the trial; and where such is the bona fide purpose of the joinder of counts, the court never exercises its power of quashing the indictment, or compelling an election."
The state is not required to elect between counts in circumstances such as presented in this case.

III
Appellant contends that the statement of the appellant in this case was illegally obtained and should not have been admitted into evidence; specifically he asserts that the statement was obtained by a custodial interrogation following an illegal arrest. He contends that the arrest was illegal because the affidavit authorizing the issuance of the warrant was insufficient to support a finding of probable cause. The Constitution of the United States, Fourth Amendment, states:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches, and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
The Alabama Constitution, Art. 1, Sec. 5, states:
"The people shall be secure in their persons, houses, papers and possessions from unreasonable seizure or searches, and that no warrants shall issue to search any place or to seize any personal thing without probable cause, supported by oath or affirmation."
The provision of each constitution regarding the issuance of warrants applies to arrests of persons as well as to the search of persons and premises. This court in Malone v. State, 51 Ala.App. 19, 282 So.2d 367, writ. quashed, 282 So.2d *630 371, 291 Ala. 789 (1973), dealt with a search warrant issued on an affidavit similar to the one in this case. The affidavit in this case states:
"Before me, Clerk or Magistrate of District Court, this day personally appeared Sara Jackson and made oath that he has probable cause for believing and does believe that within twelve (12) months before the making of this affidavit that Robert Lee Crittenden, a/k/a "Bean", whose name is otherwise unknown to the affiant, he being sixteen years of age or older, did subject to sexual contact [the victim], who was less than twelve years of age, in violation of § 13A-6-66 of the Code of Alabama, against the peace and dignity of the State of Alabama. SEXUAL ABUSE  First Degree § 13A-6-66 which said offense has been committed against the peace and dignity of the State of Alabama."
This affidavit, like that in Malone, is couched in the language of the statute itself and amounts to nothing more than a recitation of the statutory language, adding names. It is merely "the affiant's conclusion that the individual named therein had perpetrated the described offense." Malone, supra. No facts are stated in support of the conclusion. Applying the precedents as set out, we conclude that the arrest warrant was issued on the basis of insufficient probable cause so far as the record shows. However, "in passing on the validity of an arrest warrant, the reviewing court is not restricted to examining the four corners of the affidavit." Holderfield v. City of Birmingham, 380 So.2d 990, 993 (Ala.Cr.App.1979), cert. denied, Ex parte Holderfield, 380 So.2d 994 (Ala. 1980). Here, the affiant was the mother of the nine-year-old victim, who had been examined by a physician the day before the affidavit was signed. It appears that we do not have before us the information the issuing authority had before it.
Accordingly, we remand this cause for an evidentiary hearing to determine what, if any, testimony was presented to the magistrate at the time the warrant was issued and in addition to the information contained in the affidavit. Prior to that determination, a reversal is premature and unnecessary.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
TAYLOR, Judge.
We remanded this cause to the trial court to conduct an evidentiary hearing to determine what, if any, testimony was presented to the magistrate who issued the warrant other than the inadequate information in the "bare bones" affidavit. Such a hearing was held and its record was returned to this court as requested.
Sarah Jackson, the affiant, testified that she lived with the appellant Crittenden at one time and that she and Mrs. Douglas of the welfare office caused Tamitha Jackson to be examined for venereal disease. She testified that thereafter she and Mrs. Douglas came to the courthouse and saw Deputy Sheriff Phillip Raybren. They then filled out some reports in the sheriff's office. She then went to the circuit clerk's office and signed a warrant against Crittenden. She recalls that she talked to one of the clerks in the clerk's office and remembers some of the conversation. She remembers saying that she wanted to issue a warrant for Robert Crittenden and describing his car. She testified however, that she did not remember telling the clerk any of the details of the case, just things about the appellant and the car. She was uncertain whether Tamitha went with her to the clerk's office or whether she stayed at the sheriff's office.
Tamitha Jackson testified that she remembered coming to the sheriff's office with her mother and talking with the deputy. She remembered talking to a black haired white lady. She also remembered going to another office and talking to a lady there at a typewriter. She did not remember what she told the lady. She *631 testified that she answered some questions but did not remember the questions or the answers. When the court asked her if she was telling the lady what the appellant had done to her, she answered, "Yes." She said the lady had asked her what the appellant had done to her and she answered the lady's questions.
Deputy Sheriff Phillip Raybren testified that he was a deputy sheriff when the Jacksons came to the sheriff's office and that he made an incident report based upon what they told him. He did not recall whether he went to the circuit clerk's office when the warrant was issued or whether he did not.
The Honorable Ray Bozeman, Circuit Clerk of Covington County, testified that in October 1982, Leslie Glisson worked in his office as a magistrate. She had a dyed, kind of blond-looking, light colored hair and was not black-haired. She was no longer employed in his office and had moved to Atlanta.
Tamitha Jackson was recalled for cross examination by appellant's attorney. She said that the lady who asked her questions about Robert Crittenden was a black haired, white lady. She testified that she thought it was the black-haired lady in the sheriff's office who asked all these questions, but she did not know. On redirect, and again in response to the judge's questions, Tamitha stuck to her story that the lady to whom she talked had black hair.
Mrs. Douglas, from the welfare office, did not testify; the black-haired lady from the sheriff's office did not testify; and the light-haired magistrate who issued the warrant did not testify.
Appellee urges that "... there was sufficient circumstantial evidence that in the normal course of business this information, and all the details of the incident, had been imparted to the magistrate by either Tammy, Ms. Jackson or Officer Rabren before she issued the arrest warrant. Thus, the warrant was issued upon a finding of probable cause and the arrest was not illegal." In so stating, the appellee tacitly agrees with this obvious conclusion: that there is no affirmative evidence that the magistrate relied on anything other than the conclusory affidavit already dealt with in our original opinion in this case.
To cope with the problem of conclusory affidavits, we have adopted the rule that the court may look beyond the affidavit to ascertain what other information may have been furnished the magistrate. If the additional information, together with the affidavit information, supports issuance of the warrant, then it is saved. Mayes v. State, 47 Ala.App. 672, 260 So.2d 403 (1972); Neugent v. State, 340 So.2d 43 (Ala.Cr.App.1975), rev'd on other grounds, 340 So.2d 52 (Ala.1976). We view the evidence from the position of the magistrate who issues the warrant, and attempt to determine what information was in that official's possession at the time of the issuance of the warrant. Then the decision  whether or not probable cause existed for the issuance of the warrant  is made. In this case, in addition to a description of the appellant and his automobile, only the facts in the affidavit were available to the magistrate. The affidavit merely parrots the wording of the statute. The affidavit does not state facts tending to establish the commission of the offense and the guilt of the defendant, as required by § 15-7-2(b), Code of Alabama 1975. Both the Fourth Amendment of the United States Constitution and Article One, Section Five, of the Alabama Constitution require oath or affirmation establishing probable cause to arrest. Malone v. State, 282 So.2d 367, 51 Ala.App. 19, cert. quashed, 282 So.2d 371, 291 Ala. 789 (1973), describes these constitutional requirements as "unyielding demands." It is the law of the land that a confession obtained through custodial interrogation after an illegal arrest is due to be excluded from evidence unless there are intervening events which break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint. Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). In the instant case the *632 confession occurred sooner after the arrest than in Taylor, supra. During the pendency of this appeal, the United States Supreme Court decided United States v. Leon, ___ U.S. ___, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). This case establishes a "good faith exception" to the harsh requirements of Taylor v. Alabama, supra, Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and others. It was thought from early reports that United States v. Leon would make a retrial of this case unnecessary. However, the United States Supreme Court in its opinion footnoted this observation:
"Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a `bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. See Whiteley v. Warden, 401 U.S. 560, 568 [91 S.Ct. 1031, 1037, 28 L.Ed.2d 306] (1971)."
The court in the body of the opinion went on to explain:
"... Nor would an officer manifest objective good faith in relying on an affidavit `so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' Brown v. Illinois, 422 U.S. [590] at 610-611 [95 S.Ct. 2254 at 2265, 45 L.Ed.2d 416]."
We can only conclude that Leon does not help the situation we confront here.
In applying the constitutional requirements as defined by the United States Supreme Court, we have no choice but to reverse this case for retrial or other proceedings not inconsistent with this opinion.
OPINION EXTENDED; REVERSED AND REMANDED.
All the Judges concur.