317 So.2d 559

**In re Don RAINES**

**v.**

**STATE of Alabama.**

**Ex parte Don Raines.**

**SC 989.**

Supreme Court of Alabama.

May 22, 1975.

As Corrected on Denial of Rehearing
July 10, 1975.

T. J. Carnes, Albertville, for petitioner.

Atty. Gen., Birmingham, for the State, respondent.

William J. Baxley, Atty. Gen., Montgomery, and George M. Boles, Sp. Asst.

**COLQUITT, Circuit Judge.**

This case presents the narrow but precise issue whether the statutory waiver of a jury trial required by the Youthful Offender Act (Act No. 335, approved Feb. 10, 1972, Tit. 15 § 266(1)–(6), Code of Alabama, is violative of the constitutional guarantees of the right to trial by jury and due process of law.

Don Raines was indicted for unlawfully selling marijuana. At arraignment the trial court appointed counsel to represent Raines

and advised him of his "youthful offender" rights in substance as follows:

(1) If he applied for and was granted youthful offender status, he would be tried before the court without a jury; and, if found guilty as charged, he would be adjudged a youthful offender.

(2) The sentence could be suspended.

(3) He could be placed on probation for a period not to exceed three years.

(4) He could be fined with or without commitment or he could be committed to the custody of the Director of the Department of Corrections for a term of not more than three years.

(5) Any adjudication of being a youthful offender would not disqualify him from public office or public employment or operate as a forfeiture of any right or privilege or make him ineligible to receive any license granted by a public authority.

(6) Such conviction could not be deemed to be a conviction of a crime except that, if such person were subsequently convicted of a crime, a prior adjudication of his being a youthful offender could be considered.

(7) Fingerprints, photographs, and other records of him, if he were adjudged a youthful offender, would be barred from public inspection.[1]

The trial court also informed Raines that as a prerequisite to his becoming eligible for these post-adjudication "benefits," he would have to consent to (1) an examination by the court to determine whether he should be tried as a youthful offender and (2) trial without a jury; and that, if the court so determined, the issue of the defendant's guilt or innocence would be tried by the court in the event he entered a plea of not guilty.

Thereupon, Raines' counsel informed the court that Raines claimed his benefits under the Act, but that he refused to waive his right to trial by jury. The court then ordered that he be arraigned and tried as an adult. Following a plea of "not guilty," and a trial of the case, the jury found Raines guilty as indicted and he was sentenced to three years in the penitentiary. On appeal, the Court of Criminal Appeals affirmed, and we granted certiorari. We affirm and hold that the provision of the Youthful Offender Act requiring waiver of trial by jury is constitutional.

■ The Youthful Offender Act is intended to extricate persons below twenty-one years of age from the harshness of criminal prosecution and conviction. It is designed to provide them with the benefits of an informal, confidential, rehabilitative system. A determination that one is a youthful offender (1) does not disqualify the youth from public office or public employment, (2) does not operate as a forfeiture of any right or privilege, (3) does not make him ineligible to receive any license granted by public authority, and (4) shall not be deemed a conviction of crime; and (5) the record shall not be open to public inspection except upon permission of the court. Title 15, § 266(6), Code of Alabama.

The Act also affords several alternative sentencing provisions should the accused be adjudged a youthful offender and the underlying charge be a felony. The Act provides in part:

"[T]he court shall (a) suspend the imposition or execution of sentence with or without probation, or (b) place the defendant on probation for a period not to exceed three years, or (c) impose a fine as provided by law for the offense with or without probation or commitment, or (d) commit the defendant to the custody of the director of the department of

1. The trial court's explanation of the defendant's rights under the Act is set out in order that we might commend this procedure for use by trial courts in appropriate situations.

correction for a term of three years or a lesser term."

Tit. 15 § 266(4), Code of Alabama.

The adjudication and disposition of a case under the Youthful Offender Act requires that the accused consent to an examination by the court and a trial without a jury. It is this provision of the Act which is in question here.

We intend to show that the requirement that a defendant consent to a trial without a jury in order to bring himself within the purview of the Youthful Offender Act is not unconstitutional; that the denial of a trial by jury does not violate other constitutional guarantees of due process, particularly the right of confrontation and cross-examination and the privilege against self-incrimination; that the investigation and examination of the defendant by the court incident to determining whether he should be afforded youthful offender status is not a denial of due process; that the application of jury trials to youthful offender cases cannot benefit the youthful offender system, but can only create tension and overlap between that system and the system of criminal adjudication; and that the application of jury trials in such cases would only serve to vitiate the purpose for which the youthful offender system was conceived and the interests which it was designed to protect.

It has been held in *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), that trial by jury in juvenile proceedings is not constitutionally required. Relying on *McKeiver,* our Court of Criminal Appeals upheld the constitutionality of the youthful offender statute in *Flippo v. State,* 49 Ala.App. 138, 269 So.2d 155, *cert. denied,* 289 Ala. 743, 269 So.2d 164 (1972).

■ It is of first importance that the Alabama Youthful Offender Act does not categorically deny an accused the right to trial by jury. If the accused so desires,

he may have a jury trial, along with the full complement of rights and privileges accorded him under the criminal adjudicatory process. It is at his option that he brings himself within the Youthful Offender Act and it is with his consent that his case is heard without a jury.

In the instant case, appellant relies on the rationale in *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), that where an accused must waive a jury trial in order to be eligible for certain benefits, such requirement penalizes the assertion of a constitutional right and is a denial of due process.

In a Second Circuit case, *United States v. Torres,* 500 F.2d 944 (2d Cir. 1974), an attempt was made to apply this rationale to proceedings under the Federal Juvenile Delinquency Act, which at that time contained a jury-waiver provision quite similar to the jury-waiver provision in our Youthful Offender Act. The *Torres* court found that the requirement of a non-jury trial did not violate the Sixth Amendment or due process of law, and that no constitutional right to trial by jury existed in federal juvenile proceedings. 500 F.2d, at 948.

In addressing the *Jackson* rationale, the *Torres* court distinguished between cases where the defendant possesses a constitutional right to trial by jury in a criminal prosecution (such as *Jackson*), and those cases in which there is no constitutional right to a jury trial due to the nature of the proceeding and the power of Congress to circumscribe that right in certain instances. The *Torres* court stated:

"[Congress] permitted the juvenile to choose between the relatively beneficent and rehabilitative juvenile delinquency proceeding in which he was not entitled to a jury and prosecution as an adult with trial by jury. * * * [W]e hold that the provisions of the Act requiring that the consent of a juvenile to delinquency proceedings 'be deemed a waiver of a trial by jury' are constitutionally valid. The choice afforded the appellant

under these provisions did not deprive him of any constitutional right to a jury trial or impermissibly burden the exercise of any such right."

500 F.2d, at 949.

■ Similarly, we find that the proceedings under Title 15, § 266, Code of Alabama, are not criminal in nature and therefore are not subject to the constitutional mandate of trial by jury. Youthful offender adjudications are special proceedings designed to protect persons in a certain age group, heretofore tried as adults, from the stigma and often harmful consequences of the criminal adjudicatory process. It is a manifestation of the legislature's judgment that while persons are still young they may more readily and appropriately respond to methods of treatment which are more rehabilitative, more correctional and less severe than penalties to which adults are exposed. It is an extension, so to speak, of the protective juvenile process. The institution of special procedures is a right vested in the state, and their application lies within the discretion of the state.

The question arises as to whether denial of a jury trial violates the accused's rights of due process, confrontation and cross-examination of witnesses, and the privilege against self-incrimination. The right to such procedures goes to the fact-finding process and the need for accuracy in determining what the true facts are in each case. The *McKeiver* court found the jury not to be a "necessary component of accurate factfinding." 403 U.S. at 543, 91 S.Ct. 1976. The court also stated:

"The imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the factfinding function, and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner. It would not remedy the defects of the system. * * * [It] would tend once again to place the juvenile

squarely in the routine of the criminal process." 403 U.S., at 547, 91 S.Ct., at 1987.

■ Furthermore, the investigation undertaken by the court under the Youthful Offender Act does not amount to a denial of the accused's due process guarantees. The procedure whereby the court determines whether the accused should be afforded youthful offender status is not a "summary trial" where the guilty are relegated to different treatment than the innocent. Guilt or innocence is not at issue during this stage of the proceeding. Trial judges have for years considered preliminary issues before hearing a case non-jury. See, *e. g.,* Title 13 §§ 326, 327, Code of Alabama, which provide that county court judges shall "examine the affiant under oath, and other witnesses, if he so desires, touching the offense charged in the affidavit [before issuing a warrant]," and then, after issuing the warrant, try the case non-jury; or consider Title 13, §§ 363, 364, Code of Alabama, providing for transfer of juveniles between courts, where it is entirely possible for the same judge to sit, *e. g.,* transfer from juvenile court to county court or vice-versa. And, of course, after such transfer, the same judge would try the case non-jury.

In the recent United States Supreme Court case of *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), the Court in a unanimous decision upheld a state statute empowering an administrative board with both investigative and adjudicative functions. The statute was attacked on grounds of due process. In analogizing the statutory power of such a board to that of the judicial system, the Court stated:

"Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it. Judges also preside at preliminary hearings where they must decide whether the evidence is

sufficient to hold a defendant for trial. Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence."

at p. 56, 95 S.Ct. at p. 1469. The Court further stated at pp. 56–57, 95 S.Ct. at p. 1469:

"We should also remember that it is not contrary to due process to allow judges * * * who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around."

Thus, the *Withrow* case is the most recent example of the Court's recognition of that which we hold—pretrial involvement or knowledge on the part of the trial judge does not necessarily create an unconstitutional risk of bias.

We cannot say that the discretion exercised by the court in an investigation of the accused to determine his eligibility for youthful offender status is violative of due process.

■ We note that sentences under the Youthful Offender Act have the potential for exceeding the six-month maximum established in *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), which held that any sentences beyond that limit automatically entitled criminal defendants to a jury trial. The possibility of a sentence longer than six months was understood to have existed in both *McKeiver* and *Torres, supra,* and yet did not preclude a finding that denial of jury trial in such cases was constitutional.

Last, we must consider the potential harm to the operation of the youthful offender court that would be imposed by the application of jury trials. The *McKeiver* Court feared the possibility of delay, formality,

and the clamor of a public trial inherent in a trial by jury. See 403 U.S., at 550, 91 S.Ct. 1988, 29 L.Ed.2d 663. The *McKeiver* Court also stated:

"There is a possibility, at least, that the jury trial, if required as a matter of constitutional precept, will remake the juvenile proceeding into a fully adversary process and will put an effective end to what has been the idealistic prospect of an intimate, informal protective proceeding."

403 U.S., at 545, 91 S.Ct., at 1986.

■ The Alabama Youthful Offender Act was conceived for the purpose of protecting those who fall within its ambit from the stigma and practical consequences of a conviction for a crime. Accordingly, the Act provides for confidentiality in the proceedings and in the availability of the offender's records with regard to the adjudication. The introduction of a jury into such proceedings would destroy any confidentiality with which the Act attempts to clothe the proceedings and the youthful offender's record. As a practical matter, the provision that youthful offenders be tried "at court sessions separate from those for adults charged with crime" (Title 15 § 266(2), Code of Alabama), would become virtually impossible to carry out.

We find that the jury-waiver provision of the Youthful Offender Act does not render that Act unconstitutional; that the adjudicatory procedures defined by the Youthful Offender Act do not violate due process of law; and that any benefits which might result from the infusion of a jury trial into youthful offender proceedings are greatly outweighed by the detrimental effects it would have to the orderly functioning of the youthful offender system and to the interests of those persons the Act was designed to protect.

For the reasons set out above the judgment of the Court of Criminal Appeals is due to be affirmed.

The foregoing opinion was prepared by COLQUITT, Circuit Judge, temporarily on duty on the Supreme Court by order of the Chief Justice pursuant to Ala.Const. Art. 6 § 149 (1973).

Affirmed.

HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX and FAULKNER, JJ., concur.

JONES, SHORES and EMBRY, JJ., dissent.

ALMON, J., not sitting.

JONES, SHORES and EMBRY, Justices (dissenting):

We respectfully dissent. We disagree with the majority opinion in two particulars:

First, assuming arguendo that the status of a juvenile delinquent and that of a youthful offender equate, we take the position that *McKeiver* lends no support to the jury waiver provision of the Youthful Offender Act. Indeed, as we shall demonstrate, *McKeiver* makes crystal clear that nonjury trials for the juvenile system would not meet constitutional muster if, as an incident thereto, other due process guarantees were violated.

Second, the distinction between youthful offender status and that of a juvenile delinquent is of such significance as to render the nonjury rationale applicable to juveniles inapplicable to youthful offenders.

### THE HOLDING AND RATIONALE OF McKEIVER

Because the majority opinion hinges substantially on *McKeiver,* an in depth analysis of that case is appropriate. Mr. Justice Blackmun, speaking for the Court, wrote:

"The issue [the right of trial by jury in a state juvenile delinquency proceeding] arises understandably, for the Court in a series of cases already has empha-

sized due process factors protective of the juvenile:

"1. *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), concerned the admissibility of a confession taken from a 15-year-old boy on trial for first-degree murder. It was held that, upon the facts there developed, the Due Process Clause barred the use of the confession. Mr. Justice Douglas, in an opinion in which three other Justices joined, said, 'Neither man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law.' 332 U.S., at 601, 68 S.Ct., at 304.

"2. *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), where a 14-year-old was on trial, is to the same effect.

"3. *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), concerned a 16-year-old charged with housebreaking, robbery, and rape in the District of Columbia. The issue was the propriety of the juvenile court's waiver of jurisdiction 'after full investigation,' as permitted by the applicable statute. It was emphasized that the latitude the court possessed within which to determine whether it should retain or waive jurisdiction 'assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirement of a "full investigation."' 383 U.S., at 553, 86 S.Ct., at 1053.

"4. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), concerned a 15-year-old, already on probation, committed in Arizona as a delinquent after being apprehended upon a complaint of lewd remarks by telephone. Mr. Justice Fortas, in writing for the Court, reviewed the cases just cited and observed,

" 'Accordingly, while these cases relate only to restricted aspects of the

subject, they unmistakably indicate that, whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone.' 387 U.S., at 13, 87 S.Ct., at 1436.

"The Court focused on 'the proceedings by which a determination is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution' and, as to this, said that 'there appears to be little current dissent from the proposition that the Due Process Clause has a role to play.' Ibid. *Kent* was adhered to: 'We reiterate this view, here in connection with a juvenile court adjudication of "delinquency," as a requirement which is part of the Due Process Clause of the Fourteenth Amendment of our Constitution.' Id., at 30–31, 87 S.Ct., at 1445. Due process, in that proceeding, was held to embrace adequate written notice; advice as to the right to counsel, retained or appointed; confrontation; and cross-examination. The privilege against self-incrimination was also held available to the juvenile.

.    .    .    .    .    .

"5. *DeBacker v. Brainard*, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148 (1969), presented, by state habeas corpus, a challenge to a Nebraska statute providing that juvenile court hearings 'shall be conducted by the judge without a jury in an informal manner.' However, because that appellant's hearing had antedated the decisions in *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L. Ed.2d 491 (1968), and *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), and because *Duncan* and *Bloom* had been given only prospective application by *DeStefano v. Woods,* 392

U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), *DeBacker's* case was deemed an inappropriate one for resolution of the jury trial issue. . . .

"6. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), concerned a 12-year-old charged with delinquency for having taken money from a woman's purse. The Court held that 'the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged,' 397 U.S., at 364, 90 S.Ct., at 1073, and then went on to hold, at 368, 90 S.Ct., at 1075, that this standard was applicable, too, 'during the adjudicatory stage of a delinquency proceeding.'

"From these six cases—*Haley, Gallegos, Kent, Gault, DeBacker, and Winship*—it is apparent that:

"1. Some of the constitutional requirements attendant upon the state criminal trial have equal application to that part of the state juvenile proceeding that is adjudicative in nature. Among these are the rights to appropriate notice, to counsel, *to confrontation and to cross-examination, and the privilege against self-incrimination.* Included, also, is the standard of proof beyond a reasonable doubt.[1]

"2. The Court, however, has not yet said that *all* rights constitutionally assured to an adult accused of crime also are to be enforced or made available to the juvenile in his delinquency proceeding. . . ." (Emphasis supplied).

The *McKeiver* opinion then proceeded to detail the facts of each of the consolidated cases; and, after finding that the constitutional requirements mandated by the six cases just reviewed had been met, the Court declined to extend these requirements

---

1. It should be noted that neither the specially concurring opinions of Mr. Justice Brennan or Mr. Justice Harlan, nor the dissenting opinion of Mr. Justice Douglas, with whom Mr. Justice Black and Mr. Justice Marshall concurred, took issue with this summary of due process rights to be accorded an accused in a juvenile delinquency proceeding.

to include the right of trial by jury in state juvenile delinquency proceedings.

We turn now to an examination and analysis of Act No. 335. Given our initial assumption that, for the limited purpose of this aspect of the case, we will equate the status of a juvenile ·delinquent and a youthful offender, our inquiry is whether the jury waiver requirement of the Youthful Offender Act of itself necessarily violates any of the constitutional requirements applicable to state juvenile proceedings, particularly the right to confrontation and to cross-examination, and the privilege against self-incrimination.

The Act states, in pertinent part:

"A person charged with a crime which was committed in his minority but was not disposed of in juvenile court and which involves moral turpitude or is subject to a sentence of commitment for one year or more shall . . . be investigated and examined by the court to determine whether he should be tried as a youthful offender, provided he consents to such examination and to trial without a jury . . . If the defendant consents and the court so decides, no further action shall be taken on the indictment or information unless otherwise ordered by the court as herein provided. After such investigation and examination, the court in its discretion may direct that the defendant be arraigned as a youthful offender, and no further action shall be taken on the indictment or information; or the court may decide that the defendant shall not be arraigned as a youthful offender, whereupon the indictment or information shall be deemed filed."

Thus, the Act makes clear that the purpose of the investigation and examination of the defendant is to enable the trial judge to exercise an informed judgment—judicial discretion—of the eligibility of the defendant for youthful offender status. The investigation and examination of the defendant by the trial court is the procedure prescribed by the statute for the garnering of essential information as the basis for the exercise of its judicial discretion. What is this essential information? Certainly included, inter alia, are the defendant's personal and family background, his past criminal record, if any, and the facts and circumstances of the alleged crime itself.

Manifestly, then, it is crucial to the equal application of the beneficent purpose sought to be effected by the Act that the trial court, in the discharge of its judicial responsibility for determining eligibility, be sufficiently informed of those matters essential to such a decision. If, in the exercise of its discretion, the trial court determines that the defendant is eligible for youthful offender status, and if, upon arraignment, the defendant pleads not guilty, the trial court is placed in the anomalous situation of having been required by the statute to review information which the Constitution forbids to the trier of the facts.

Consequently, we are faced here with the situation where the Act's requirements that the defendant waive his right of trial by jury necessarily violates other constitutional guarantees of due process, particularly the right of confrontation and cross-examination of witnesses and the privilege against self-incrimination. This anomaly is brought about because sequentially our Youthful Offender Act places on the trial court the responsibility to determine eligibility for youthful offender status prior to the defendant's arraignment and trial.[2]

2. Our research indicates that Alabama stands alone among the states having similar procedures in placing the trial of. the issue of innocence or guilt after the determination of youthful offender status. We also note in passing that, as the Court of Criminal Appeals in *Flippo* observed, "Act No. 335 was borrowed, body and soul, from the 'Model Sentencing Act' . . . [which] was patterned, in large measure, from the State of New York's Youthful Offender Act . . .". And, as *Flippo* further acknowledges, the

Before the defendant can avail himself of the Act, i. e., before he may be considered for youthful offender treatment, he must first consent to a summary trial without a jury. If the defendant elects to enter a plea of not guilty but still wishes to avail himself of the benefits incident to such a status, the Act requires, in addition to the jury waiver, that he also waive other constitutional guarantees which, according to *McKeiver*, must be afforded even in state juvenile delinquency proceedings.

While we would be willing, for the purpose of this aspect of the case, to equate the status of a youthful offender to that of a juvenile, and afford an accused youth between the ages of 16 and 21 no greater constitutional rights than those prescribed by *McKeiver* for a juvenile, we are unalterably opposed to the creation of a third category for youthful offenders which is constitutionally inferior to that of either an adult or a juvenile. Indeed, it is our opinion that any reasonable interpretation of *McKeiver*, and the cases reviewed therein, forbids us to do so. This conflict between the jury trial waiver provision of the Act—carrying with it as it does other waivers—and the constitutional due process clause must be resolved, and we think its resolution requires that we strike the statutory jury trial waiver provision.

Perhaps our point can be clarified under the following hypothesis: Suppose the Act, in merging the status determination and the issue of guilt, had placed both responsibilities in the hands of a jury. One would not question the reaction of this Court, or any other appellate court, in holding invalid a procedure requiring submission to a jury all statements, admissions, or confessions of

the accused, probation reports containing hearsay, past criminal record, unverified reputation, etc. Nor would any court hold that the evils inherent in such a procedure could be cured by the strongest admonitions by the trial court to the jury to disregard such data in its deliberation of the innocence or guilt issue. Yet, the statute itself mandates that the trial judge do exactly that.

In other words, the Act contemplates that the trial court, for status determination purposes, will have access to statements, admissions, or confessions made by the defendant (§ 266(3)), but forbids their admissibility at trial upon the defendant's plea of not guilty. This section of the Act goes further to allow the court to recall and consider such intelligence for purposes of sentencing whether the accused is convicted of a crime or adjudged a youthful offender.

We submit that on the one hand this Court would unhesitatingly disapprove of this merged procedure being handled by a jury for reasons readily apparent, but this Court on the other hand approves the Act as written which places the identical dual determination (both as to status and guilt) in the trial court. The constitutional proscription as to the one is equally applicable to the other. Just as in the case of the jury, this places upon the trial judge an unconstitutional burden.

In concluding our discussion under this aspect of the case, we re-emphasize the point that we are addressing only that situation in which the accused (between 16 and 21 years) does not enter a voluntary plea of guilty. Admittedly, a vast majority of youthful offenders seeking the benefits of this Act will do so in prior contempla-

Court of Appeals of New York, in *People v. Michael A.C.* (Anonymous), 27 N.Y.2d 79, 313 N.Y.S.2d 695, 261 N.E.2d 620 (1970), held that the jury trial waiver provision of the Act unconstitutional. Thereafter, the New York State Legislature repealed the Youthful Offender Act and adopted the "Youth Court Act" which provides for a post-conviction

determination and sentencing. To be sure, we would have no difficulty in agreeing with the holding and rationale of the majority in the instant case if our Act delayed the status determination and the treatment of the accused thereunder until the post-conviction and presentencing stage of the proceedings.

tion of entering voluntarily a plea of guilty to the offense charged. In such cases the issue here before us never arises. But, in the instant case, as indeed every accused has the right to do, the defendant entered a plea of not guilty. It is in this limited context that our discussion is addressed. The voluntariness vel non of the plea is more fully developed in our discussion under the second aspect which follows:

## YOUTHFUL OFFENDER VERSUS JUVENILE DELINQUENT STATUS

Under this aspect of the case we are unwilling to concede the application of *McKeiver* and this point can be clarified initially by an analysis of *Flippo*.

Two comments are appropriate: First, the accused in *Flippo* voluntarily waived his right to jury trial and sought youthful offender status under the Act, the constitutionality of which was challenged by the State. Second, the flaw in *Flippo* was in basing its decision on the holding of *McKeiver* since *McKeiver* was concerned with *juveniles* rather than *youthful offenders*.

Under the law, by virtue of age alone, one is already adjudged a juvenile or not when the offense is committed and hence is governed by that procedure from the moment of arrest. Such is clearly not the case under the Youthful Offender Act because the determination of whether one will be tried as a youthful offender cannot even begin to be decided until "he [the defendant] consents to such examination and to a trial without a jury." This crucial distinction renders the holding of *McKeiver*, as it relates to the jury issue, inapplicable to cases involving youthful offenders.

Also, *Flippo* relies on *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed. 2d 491 (1972), particularly where it states:

" * * * Our conclusion is that in the American States, as in the federal judicial system, a general grant of jury trial for serious offenses is a fundamental right, essential for preventing miscarriages of justice and for assuring that fair trials are provided for all defendants. We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury. *Thus we hold no constitutional doubts about the practices, common in both federal and state courts, of accepting waivers of jury trial and prosecuting petty crimes without extending a right to jury trial.* However, the fact is that in most places more trials for serious crimes are to juries than to a court alone; a great many defendants prefer the judgment of a jury to that of a court. Even where defendants are satisfied with bench trials, the right to a jury trial very likely serves its intended purpose of making judicial or prosecutorial unfairness less likely." (Emphasis added by the Alabama Court of Criminal Appeals.)

*Flippo*, according to this reasoning, impliedly limits cases tried under the Youthful Offender Act to petty crimes. But how can a crime such as the one here in question, which, even if the Act is applied, carries a maximum penalty of three years' imprisonment, be deemed petty? Conversely, the juvenile system by its express language not only is prohibited from adjudication of criminality but cannot impose a prison sentence. Indeed, except for extraordinary circumstances, any judge who violates this proscription is himself guilty of a misdemeanor. Tit. 13, §§ 379, 382, Code.

While the right to a jury trial may always be waived, a youthful offender does not enjoy that privilege because under the terms of the Act this right must be waived as a prerequisite to the trial court's consideration of affording the defendant youthful offender status. As *Duncan* states, "a general grant of jury trial for serious offenses is a fundamental right, essential for

preventing miscarriages of justice and for assuring that fair trials are provided for all defendants."

In *Baldwin v. N. Y.*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), the United States Supreme Court held that any criminal offense where the accused possibly faces imprisonment for more than six months carries with it the right of trial by jury. This constitutional right cannot be averted by denominating the adjudication "Youthful Offender," as opposed to the criminal offense originally charged, and upon conviction imposing sentence up to three years.

Additionally, it is our considered opinion that the Youthful Offender Act embraces the "stick and carrot" concept which needlessly penalizes the assertion of a constitutional right. This precise issue was addressed in *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (involving Federal Kidnapping Act), where the Court said:

"[T]he evil in the federal statute is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them. A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right."

It seems apparent to us that the Youthful Offender Act, like the Federal Kidnapping Act, "tends to discourage defendants from insisting upon their innocence and demanding trial by jury [and] hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily."

## CONCLUSION

We are mindful that it is our judicial obligation to construe statutes in such a way as to carry out the will of the legislative branch of the government—to ascertain and effectuate the intent of the Legislature as expressed in the statute. *League of Women Voters v. Renfro*, 292 Ala. 128, 290 So. 2d 167 (1974). This fundamental rule of construction is mandated by the separation of powers doctrine.

The Legislature intended to implement an intermediary system which would accommodate the needs of those individuals too old to qualify as a juvenile but too young to be thrust into the adult criminal system of our courts. It is our considered opinion that the Act absent the jury trial waiver provision is workable and its operative effect retains this overall beneficial legislative intent.[3]

We believe the procedure outlined in *Clemmons v. State*, 294 Ala. 746, 321 So.2d 238 [this date decided], is in no way hindered or made less applicable if the right of trial by jury is preserved to those deemed eligible for the benefits of the Act who enter a not guilty plea, thereby separating the status determination process from the trial of the issue of innocence or guilt of the offense charged. Only by separating the two processes—the status determination from the trial on the defendant's plea of not guilty—can the constitutionally prejudicial ingredients inherent in the former step be rendered harmless in the latter; and this separation is effectively accomplished by preserving the defendant's right of trial by jury on his not guilty plea.

It is our opinion that the Act, with the jury trial waiver provision deleted, is both workable and in keeping with its noble purpose since the intent of the Act remains alive and the constitutional requirements (Art. 1, § 6, Const. of Ala., and Amendment XIV, Const. of the U. S.) are satisfied. With the jury waiver provision retained, the otherwise Herculean effort results in but a Pyrrhic victory.

Therefore, we would reverse and remand.

---

3. Act No. 335 contains a severability clause.