954 So.2d 604 (2006)
S.T.E.
v.
STATE.
CR-04-2298.
Court of Criminal Appeals of Alabama.
April 28, 2006.
*605 Robert G. Poole and Davis B. Whittelsey, Opelika, for appellant.
*606 Troy King, atty. gen., and Hense R. Ellis II, asst. atty. gen., for appellee.
McMILLAN, Presiding Judge.
S.T.E. was indicted for unlawful possession of marijuana in the first degree, a violation of § 13A-12-213, Ala.Code 1975. The trial court granted his motion to be treated as a youthful offender under the Youthful Offender Act. After reserving the right to challenge the legality of the search and seizure on appeal, S.T.E. entered a plea of guilty. The trial court sentenced him to 3 years in the custody of the Department of Corrections and ordered him to perform 100 hours of community service. The court also ordered him to pay a $1,000.00 as a Drug Demand Reduction Act assessment, $100.00 for deposit in the Alabama Forensic Services Trust Fund, $50 to the Crime Victims Compensation Fund and court costs.
At the suppression hearing, Officer Russell Hayes of the Auburn Police Department, testified that on June 21, 2004, he responded to a call at the Summer Brooke Apartments. After he had resolved the problem for which he had been called, the manager informed him of an additional situation that involved possible animal cruelty or neglect. The manager told Hayes that a dog belonging to S.T.E. had been left unattended for long periods. He also showed Hayes photographs of S.T.E.'s apartment, which showed animal feces all over the floor. Hayes contacted Krista Weldon, Auburn's animal control officer, and asked her to report to the scene. The two of them then went to S.T.E.'s apartment. S.T.E. opened the door, and the dog escaped. After S.T.E. returned with the animal, Hayes asked if he would allow them to "look at the dog and look at his surroundings, its food and water and everything, and checkjust check on the general welfare of the animal." S.T.E. then allowed the officers to come inside the apartment.
Officer Weldon testified that she checked for rabies tags and city licenses; the dog had none and she issued a citation or warning to S.T.E. Officer Hayes said that he found no sign of feces in the apartment and that the dog appeared to be healthy. Hayes told S.T.E. that they would like "to look at the dog's food and water and where it lived at [sic] because those are three things that you are required to provide; is [sic] shelter, water, and food." S.T.E. walked to the bathroom, which was in the back area of the apartment and pulled out some dog-food bowls and a large bag of dog food. He then set the dog food in front of the bathroom door. Officer Hayes pointed to the back of the apartment and asked if he "could look around in those areas," and S.T.E. "did say that it was fine." Hayes entered the bedroom and inspected the dog's bed, which appeared to be in acceptable condition. He then walked from the bedroom into the bathroom to check the items S.T.E. had left outside the bathroom door. When he entered the bathroom, Hayes saw a small bag of Purina brand Puppy Chow sitting on the counter. He looked inside the bag "to check the condition of the food, to make sure it was what I would consider to be [acceptable] for a dog; edible; not moldy or old or anything of that nature." Inside the bag, Hayes found a large bag containing what appeared to be marijuana. He stepped out of the bathroom and called additional officers, including a narcotics officer, to assist at the scene.

I.
S.T.E. contends that Officer Hayes's search exceeded the scope of his consent. He argues that Hayes asked to see the dog's "food and water and where it lived," and he showed him the dog's food *607 and the dog's food and water bowls. Hayes then asked to see where the dog slept and found the bed to be in acceptable condition. At that point, S.T.E. says, the scope of his consent had been met and the search should have ended. He argues that Hayes should not have entered the bathroom or opened the closed bag of Puppy Chow because, he says, the animal Hayes was checking on was a dog, not a puppy, and he had already produced a bag of dog food in response to the officers' request to see the animal's food.
"`The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonablenesswhat would the typical reasonable person have understood by the exchange between the officer and the suspect?' Generally, a general consent to search an area . . . permits the police to open closed but unlocked containers found in the place as to which consent was given, especially if the police have told the suspect what they are searching for and that object might be concealed in the closed container."
Tillman v. State, 647 So.2d 7, 10 (Ala. Crim.App.1994) (citations omitted).
Here, S.T.E. had expressly consented to an examination of his dog's food. Therefore, Officer Hayes could reasonably believe that he was allowed to examine a bag of Puppy Chow sitting in plain view. S.T.E. argues that the dog was not a puppy, but he has offered no evidence regarding the size or age of the dog. Furthermore, S.T.E. gave express consent for the officers to examine both his dog's "surroundings" and the "back areas" of his apartment. The bathroom was in the back part of the apartment, and the door from the adjacent bedroom was open and could have been entered by the dog. Therefore, it was reasonable for Officer Hayes to conclude that under the consent given he could examine the bathroom and the bag of Puppy Chow.

II.
S.T.E. has not challenged the sentence imposed on him by the trial court. However, "[m]atters concerning unauthorized sentences are jurisdictional and, therefore, can be reviewed even if they have not been preserved." Hunt v. State, 659 So.2d 998, 999 (Ala.Crim.App. 1994). The trial court permitted S.T.E. to be treated as a youthful offender under the Youthful Offender Act. "The Youthful Offender Act is intended to extricate persons below twenty-one years of age from the harshness of criminal prosecution and conviction." Ex parte Raines, 294 Ala. 360, 363, 317 So.2d 559, 561 (1975). "An adjudication of youthful offender status is very different from conviction as an adult because it is not deemed a conviction of crime at all." Gordon v. Nagle, 647 So.2d 91, 95 (Ala.1994).
Section 13A-12-281(a), Ala.Code 1975, a part of the Demand Reduction Assessment Act, imposes an additional penalty of $1,000 for first offenders and $2,000 for second and subsequent offenders on "every person convicted of, or adjudicated delinquent for," certain drug offenses, including the offense set out in § 13A-12-213. Section 36-18-7(a), Ala.Code 1975, the Alabama Forensic Services Trust Fund statute, imposes an additional fee of $100 on "any conviction in any court of the state for drug possession, drug sale, drug trafficking, and drug paraphernalia offense as defined in Sections 13A-12-211 to 13A-12-260, inclusive." Neither statute explicitly states that the penalty or fee is to be imposed on youthful offenders or on adjudications under the Youthful Offender Act.
"`[Penal] statutes are to reach no further in meaning than their words.'" Fuller v. State, 257 Ala. 502, 505, 60 So.2d 202, 205 (1952). "`"No person is to be *608 made subject to [penal statutes] by implication, and all doubts concerning their interpretation are to predominate in favor of the accused."'" Fuller, 257 Ala. at 505, 60 So.2d at 205 (quoting Scott v. State, 152 Ala. 63, 64, 44 So. 544, 545 (1906) (quoting in turn Bishop on Statutory Crimes § 194)). In Sheffield v. State, 708 So.2d 899 (Ala.Crim.App.1997), this court addressed the statutory mandate of § 13A-1-6, Ala.Code 1975, which requires all provisions of the Alabama Criminal Code to be construed "according to the fair import of their terms to promote justice and to effect the objects of the law. . . ." We stated:
"The focus in § 13A-1-6 on the `fair import of [a penal statute's] terms' is the legislature's manifestation of its `preference for the meaning of the statute over legislative intent as a criterion of interpretation.' `The reference to a "meaning of the statute" which is juxtaposed with and therefore distinct from legislative "intention," expresses concern for giving effect to the way in which the statute is understood by others than the members of the legislature itself.' `[I]nquiry begins not with conjecture about what [the legislature] would have liked to have said when it wrote the statute or with what [the legislature] would say today given the chance, but rather what [the legislature] indeed expressed in the statutory context.'"
701 So.2d at 905. (citations omitted).
Because § 13A-12-281 and § 36-18-7 do not explicitly apply to youthful offenders, the trial court should not have imposed either penalty on S.T.E.[1] For the foregoing reasons, we affirm S.T.E.'s adjudication of guilt and youthful offender adjudication and remand this cause for the trial court to vacate the $1,000 assessment imposed pursuant to the Drug Demand Reduction Act assessment and the $100 fee imposed for deposit to the Alabama Forensic Services Trust Fund. Due return should be filed in this court no later than 42 day from the date of this opinion.
AFFIRMED IN PART AND REMANDED WITH DIRECTIONS.[*]
COBB, BASCHAB, SHAW, and WISE, JJ., concur.
NOTES
[1] We note that in 1995, the legislature addressed a similar omission from § 15-23-17, which permits the assessment of additional costs and penalties under the Alabama Crime Victims Compensation Act, by amended the statute to add the appropriate language. Similar clarifications could be made by the legislature with regard to the drug demand reduction assessment and the forensic services fee.
[*] Note from the reporter of decisions: On August 11, 2006, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On August 25, 2006, that court denied rehearing, without opinion. On October 13, 2006, the Supreme Court denied certiorari review, without opinion (1051727).