The appellant, Sahking Burke, was convicted of one count of murder made capital because it was committed during the commission of a first-degree robbery, see § 13A-5-40(a)(2), Ala. Code 1975, and one count of attempted murder, see §§ 13A-4-2 and 13A-6-2, Ala. Code 1975. He was sentenced to life imprisonment without the possibility of parole for the capital-murder conviction and to life imprisonment for the attempted-murder conviction. In addition, he was ordered to pay a $50 crime-victims-fund assessment for each conviction.
The record established that on October 2, 2002, Lawrence Lamar Lawrence was shot and killed outside a Chevron gasoline station in Jefferson County. Lawrence and his girlfriend, April Strickland, were on their way to a fast-food restaurant and had stopped at the gasoline station to purchase soft drinks and cigarettes.
Lawrence parked his vehicle on the side of the building, spoke to a few acquaintances outside of the store, and then went into the Chevron station to make his purchases. Lawrence left the keys in the ignition of the vehicle and the windows down. Strickland remained in the vehicle, wearing her seat belt in the center of the bench seat. One of the men Lawrence had spoken with approached the vehicle and threw a package of marijuana into the vehicle. Strickland placed the package on the floorboard.
Suddenly, a man Strickland later identified as Burke ran to the passenger side of the vehicle. Burke leaned the top half of his body into the vehicle through the passenger side window. Burke's face was approximately one foot away from Strickland's face. He pulled a pistol from his waistband, stuck it in Strickland's side, and stated "Give it up, Sweetheart."
Lawrence returned to the vehicle, and, upon opening the driver's side door, noticed that a man was leaning in the passenger side holding Strickland at gunpoint. Lawrence stepped back and turned to walk sideways, and Burke raised his pistol and fired. The bullet grazed Strickland's forehead before striking Lawrence.
Lawrence took several steps before collapsing in the parking lot. Burke jumped back from the vehicle, aimed his pistol at Strickland's head and shot again. His shot missed Strickland. Burke then fled the scene. Lawrence died as a result of the gunshot wound.
On February 6, 2003, Burke was arrested on unrelated charges in Atlanta, Georgia. During interrogation, Burke asked to speak to homicide detectives so that he could confess to the homicide he had committed in Alabama months earlier. Detective J.D. Stephens testified at the suppression hearing that Burke freely and voluntarily confessed to the shooting in Alabama. Burke stated to law-enforcement officers that he wanted to "clear his *Page 310 
heart up." Burke told detectives that he was having problems with his girlfriend and he felt it was a part of the shooting issue and he wanted to confess and "get right with God." Burke was advised of his Miranda[1] rights. Burke waived those rights and stated that he wanted to talk about the shooting. Burke then confessed to killing Lawrence. Burke outlined in detail the facts of the October 2002 shooting.
Atlanta authorities contacted the Birmingham Police Department. Detective Jody Jacobs made arrangements to travel to Atlanta to interview Burke. Detective Jacobs advised Burke of hisMiranda rights. Again, Burke said that he understood his rights, and he agreed to talk to Detective Jacobs. Burke signed a waiver-of-rights form. He supplied a second detailed confession regarding the events that occurred at the Chevron station on October 2, 2002. Burke was charged with capital murder for the killing of Lawrence and for the attempted murder of Strickland.
Burke argues that his case should be remanded to the trial court on the ground that he was 18 at the time of the commission of the offenses, and the record does not show that the trial court notified him of the right to seek youthful-offender status. He does not contend that he has the right to be adjudicated a youthful offender, merely that he had the right to be considered for adjudication as a youthful offender.
Section 15-19-1, Ala. Code 1975, sets forth the trial court's duties with respect to the application of the Youthful Offender Act:
 "(a) A person charged with a crime which was committed in his minority but was not disposed of in juvenile court and which involves moral turpitude or is subject to a sentence of commitment for one year or more shall, and, if charged with a lesser crime may[,] be investigated and examined by the court to determine whether he should be tried as a youthful offender, provided he consents to such examination and to trial without a jury where trial by jury would otherwise be available to him. If the defendant consents and the court so decides, no further action shall be taken on the indictment or information unless otherwise ordered by the court as provided in subsection (b) of this
section.
 "(b) After such investigation and examination, the court, in its discretion, may direct that the defendant be arraigned as a youthful offender, and no further action shall be taken on the indictment or information; or the court may decide that the defendant shall not be arraigned as a youthful offender, whereupon the indictment or information shall be deemed filed."
In Russell v. State, 897 So.2d 434
(Ala.Crim.App. 2004), this Court addressed a similar claim. We noted:
 "This Court recognizes that proceedings under the Youthful Offender Act are substantially different from ordinary adult criminal proceedings. In Baldwin v. State, 456 So.2d 117, 123-24
(Ala.Crim.App. 1983), we held:
 "`In Alabama, the proceedings under the Youthful Offender Act are not criminal in nature and are used to protect persons in a specified age group, who would otherwise be tried as adults, from the harsh consequences of the criminal adjudicatory process. Raines v. State, 294 Ala. 360, 317 So.2d 559
(1975).
 "`"The Youthful Offender Act is intended to extricate persons below *Page 311 
twenty-one years of age from the harshness of criminal prosecution and conviction. It is designed to provide them with the benefits of an informal, confidential, rehabilitative system. A determination that one is a youthful offender (1) does not disqualify the youth from public office or public employment, (2) does not operate as a forfeiture of any right or privilege, (3) does not make him ineligible to receive any license granted by public authority, and (4) shall not be deemed a conviction of crime; and (5) the record shall not be open to public inspection except upon permission of the court. Title 15, § 266(6), Code of Alabama."
 "`Raines v. State, [294 Ala. at 363, 317 So.2d at 561]. See also commentary in § 15-19-1
through § 15-19-7, Code of Alabama 1975.'
"The decision to grant or to deny an eligible defendant youthful-offender treatment is a matter solely within the trial court's discretion. See § 15-19-1, Ala. Code 1975. However, § 15-19-1 has been interpreted to impose an affirmative duty on the court to apprise an accused youthful offender of the benefits of the Act. See Clemmons v. State,294 Ala. 746, 750, 321 So.2d 238, 243 (1975); Robinson v. State,429 So.2d 682, 683 (Ala.Crim.App. 1983); Bledsoe v.State, 409 So.2d 924, 926 (Ala.Crim.App. 1981); andJohnson v. State, 55 Ala.App. 579, 580, 317 So.2d 546,547 (Ala.Crim.App. 1975).
 "The usual procedure mandated by the Youthful Offender Act is that the court advise the youthful offender of the existence and advantages of the Act before any trial has begun, thus allowing the offender the option of whether to incur the background investigation, or proceed with a trial by jury. § 15-19-1, et seq., Code of Alabama 1975; Clemmons v. State, 294 Ala. 746, 321 So.2d 238 (1975); Johnson v. State, 56 Ala.App. 582, 324 So.2d 297, cert. denied, 295 Ala. 407, 324 So.2d 305 (1975). But where this has not been done, and the offender has proceeded to trial and been found guilty by a jury, a complete reversal has not been mandated by our appellate courts; instead, the cause is remanded to the trial court so that the proper procedures might be implemented.'
 "Prince v. State, 392 So.2d 853, 855-56
(Ala.Crim.App. 1980)."
897 So.2d at 436-37.
Here, the record indicates that Burke was 18 years old when the offenses were committed; thus, he was eligible to request treatment as a youthful offender, pursuant to § 15-19-1, Ala. Code 1975. The record does not, however, affirmatively show that the trial court notified Burke of his right to seek application of the Youthful Offender Act. The State contends that because the notice of appeal prepared by the circuit clerk indicates that the trial court denied Burke youthful-offender status, this case need not be remanded for actions in accordance with § 15-19-1, Ala. Code 1975. We do not agree. The fact that a document prepared by the circuit clerk indicates that a defendant was denied youthful-offender status does not affirmatively establish that Burke was advised of his right to apply for such treatment.
Therefore, based on Clemmons v. State, 294 Ala. 746,321 So.2d 238 (1975), we remand this case for the trial court to make findings of fact consistent with this opinion. If it is determined that Burke was not properly informed of his right to seek youthful-offender status, an investigation should be conducted to determine *Page 312 
whether Burke is qualified for youthful-offender status, following the instructions enumerated in Clemmons, supra. If Burke qualifies for youthful-offender treatment, his conviction should be reversed, and he should be afforded youthful-offender treatment. If the trial court, in its discretion, determines that Burke is not qualified to be treated as a youthful offender, then the failure of the trial court to advise him of his rights before his conviction was harmless error, and we will then consider the merits of Burke's remaining claims.
The circuit court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 42 days of the release of this opinion.
REMANDED WITH INSTRUCTIONS.*
BASCHAB, P.J., and McMILLAN, SHAW, and WELCH, JJ, concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
* Note from the reporter of decisions: On June 22, 2007, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On July 13, 2007, that court denied rehearing, without opinion. On March 14, 2008, the Supreme Court denied certiorari review, without opinion (1061489).