Eddie Prince was indicted by the grand jury for robbery in that he took the sum of $190.00 from one Willie Hopkins "against his will, by violence to his person or by putting him in such fear as unwillingly to part with the same." At trial Prince was found guilty by the jury and sentenced to serve twelve years in the state penitentiary. Prince has been represented at all stages by appointed counsel.
Willie Hopkins, the victim of the robbery, testified that, on Saturday, July 21, 1979, he had been present at the laundromat in North Birmingham of which he was manager; *Page 854 
also present were Darlene Wilson and Johnny Brown, the former engaged in washing clothes, the latter just visiting Hopkins. Hopkins stated that at some point Eddie Prince, a Russell Mitchell, and a third man Hopkins did not know all entered the laundromat; Hopkins testified that he knew appellant by sight, and had known him and his mother for a number of years. The third unknown man began talking about visiting relatives and leaving town, at which point Mitchell asked Hopkins for change to operate a soft drink machine. Upon being told by Hopkins that the machine would make change, Mitchell passed by Hopkins and then around behind him, at which time he placed a gun at Hopkins' head and grabbed him around the face. Hopkins stated that Mitchell then removed the pistol that Hopkins usually carried and tossed it to appellant, telling appellant to "get the money" (R. 17). Appellant then reached into Hopkins' pocket and jerked out a sum of money, tearing Hopkins' pants and causing him to fall to the floor; the sum of money was stated to be $190.00. Appellant, Mitchell, and the third man, who had stood in the doorway during these events, fled the scene on foot. Hopkins was unsure about the time of the robbery, variously testifying that it was between one and two o'clock, or before noon. In any event he reported the robbery to the police, and at some later date talked to Sergeant Farrell of the Birmingham police.
Darlene Wilson testified that she was present in the laundromat on the day in question washing clothes and that she witnessed three men attack Hopkins. She stated that the man who remained in the door had a pistol and instructed her to move back around some washing equipment. The witness was unable to identify any of the three men.
Detective Sergeant J.C. Farrell of the Birmingham Police Department testified that he talked to Willie Hopkins some four days after the robbery, and at that time Hopkins told him that Eddie Prince was one of the trio that had robbed him. Farrell stated that he arrested appellant the next day and took him into jail. The State rested, and appellant's motion to exclude the State's evidence was overruled.
Delwin Denise Prince testified for the defense that she was appellant's sister, and that on the date in question she had accompanied appellant to a parts store so that appellant might obtain a part needed to repair their mother's clothes dryer. Miss Prince stated that they had left home about one o'clock in the afternoon, and returned a little after two. During the return trip, the car ran out of gas on an interstate off-ramp, and appellant left the car to go get some gasoline while so stopped. Miss Prince stated that she saw a cousin, Willie Jackson, who stopped to render assistance. Upon appellant's return with the gas, they proceeded home, where appellant finished repairing the dryer. The receipt from the parts store was identified by Miss Prince and received into evidence.
Gladys Prince stated that she was the mother of the appellant, and that on the date in question she had requested him to fix the dryer, a task that he commenced during the morning. She gave him the money with which to buy the needed part, and testified that he had left around one o'clock, returning around two-thirty. She stated that upon his return he fixed the dryer.
Willie Jackson testified that he was a cousin of appellant's and on the date in question he had seen appellant and his sister stranded on an interstate off-ramp between two and two-thirty in the afternoon. He stated that he stopped to help but went on when appellant told him that he was only out of gas.
The appellant then took the stand in his own defense and testified that, on July 21, 1979, he had undertaken to repair his mother's dryer. Upon discovering that he needed a part, he went to the parts store, leaving around one o'clock as the store closed at two. During the return trip, he stated that the car ran out of gas, and he was forced to walk to a gas station where he purchased a dollar's worth of gasoline. He saved a small quantity to use for the carburetor. *Page 855 
He testified that at that point his cousin came by. Appellant denied knowing anyone named Russell or Russell Mitchell.
The final defense witness was John W. Brown, who stated that he had been at the laundromat all day on the date in question, arriving there early that morning. He had left around eleven thirty to get some lunch but returned shortly thereafter. He testified that Darlene Wilson was present and that he witnessed the attack on Willie Hopkins. He also stated that, though he knew both Eddie Prince and Russell Mitchell, neither had been present during the robbery. At this point the defense rested.
 I
At the conclusion of the State's case-in-chief, appellant moved the court to exclude the State's evidence because the State's main witness, Hopkins, "never pointed the defendant out, and it was never indicated on the court's record that this was the one who robbed him" (R. 51). The motion was overruled, and appellant asserts that this action was error.
While it appears true, as appellant contends, that no formal in-court identification technique was employed by the State, examination of the record does reveal, inter alia, the following:
 "Q. Mr. Hopkins, do you know the defendant, Eddie Prince?
"A. Sir?
"Q. Do you know the defendant, Eddie Prince?
"A. Yeah.
"Q. How long have you known him?
"A. From a boy up until what he is now [R.11].
. . . . .
"Q. And, how was it you were able to recognize them.
 "A. `Cause I knew them and been seeing them all the time. They didn't have nothing over their face. They like he is right now [R.22].
. . . . .
"Q. Do you recall what else they were wearing?
 "A. Some old black glasses. That's all he had on. This boy just like he is right now [R.22]." [Emphasis supplied]
We believe that these quoted portions, together with the constant referrals to "the defendant" or "Eddie Prince" evident in the record, were quite sufficient to identify appellant as the Eddie Prince seen by Hopkins and named in the indictment. See, Bush v. State, Ala.Cr.App., 333 So.2d 186 (1976); Royalsv. State, 36 Ala. App. 11, 56 So.2d 363, affirmed, 256 Ala. 390,56 So.2d 368 (1951); United States v. McDonald, 606 F.2d 552
(5th Cir. 1979). The motion to exclude was properly overruled.
 II
After the verdict was returned and appellant sentenced in accordance therewith, appellant filed a motion with the trial court averring that he was twenty-one years of age and requesting treatment as a youthful offender, pursuant to §15-19-1, et seq., Code of Alabama 1975. The trial court duly ordered (R. 129) that an investigation of appellant be made by the Board of Pardons and Paroles, and upon receipt of the report conducted a hearing at which appellant, his counsel, and representatives of the State were present. At the conclusion of this hearing the trial court denied appellant's motion to allow him youthful offender status.
Appellant initially challenges the failure of the trial court to advise appellant of the advantages of youthful offender status and to seek his consent to submit to the background investigation. The usual procedure mandated by the Youthful Offender Act is that the court advise the youthful offender of the existence and advantages of the Act before any trial has begun, thus allowing the offender the option of whether to incur the background investigation, or proceed with a trial by jury. § 15-19-1, et seq., code of Alabama 1975; Clemmons v.State, 294 Ala. 746, 321 So.2d 238 (1975); Johnson v. State,56 Ala. App. 582, *Page 856 324 So.2d 297, cert. denied, 295 Ala. 407, 324 So.2d 305 (1975). But where this has not been done, and the offender has proceeded to trial and been found guilty by a jury, a complete reversal has not been mandated by our appellate courts; instead, the cause is remanded to the trial court so that the proper procedures might be implemented. Thus, as noted by the Supreme Court inClemmons v. State, supra:
 "Upon completion of the investigation, he should then proceed to examine the defendant. If, in his discretion, he determines that the defendant is entitled to youthful offender treatment, the sentence imposed in the . . . case should be set aside, and the defendant should be afforded youthful offender treatment under the provisions of the statute. If, after the investigation and examination, the court determines that the defendant is not entitled to youthful offender treatment, the judgment of conviction and the sentence imposed stand."
In scrutinizing the procedures employed in the instant case, we find that the trial court employed the services of a probation officer, something not required under the terms of our statute, Clemmons, supra; Morgan v. State, Ala.Cr.App.,363 So.2d 1013 (1978). Additionally, the court conducted a hearing and presumably examined the appellant, who was present, though no transcript of those proceedings is before us in the record. In any event, a formal hearing is not required, but only some measure of inquiry or examination. Morgan v. State, supra.
There was no error in the procedures employed by the court in this case, and appellant's contentions to that effect are plainly without merit.
Finally, however, appellant argues that the trial judge abused his discretion in denying youthful offender treatment to appellant, especially in light of the favorable report from the probation officer; the trial court gave no reasons in its order (R. 133) denying youthful offender status. We find the case ofMorgan v. State, Ala.Cr.App., 363 So.2d 1013 (1978), instructive here. In that decision, Judge Bowen opined:
 "While we have no indication of why youthful offender status was denied in this case, the trial judge is not required to state his reasons for denying youthful offender status. This court will not overturn that exercise of discretion except where it affirmatively appears that the decision of the trial judge was arbitrary or made without some examination or investigation of the youthful offender. Watkins v. State, Ala.Cr.App., 357 So.2d 156; cert. denied, Ala., 357 So.2d 161 (1977). It is not for this court to overturn the decision of the trial judge in denying youthful offender status simply because we would not have made that same decision."
While the terms of the report were undoubtedly favorable to appellant (R. 131), given the gravity of this offense and other factors available to the trial judge upon a hearing, we are unable to say that the trial judge manifestly abused his discretion in denying appellant youthful offender status.Morgan v. State, supra; Reese v. State, Ala.Cr.App.,381 So.2d 107 (1980); Barnett v. State, Ala.Cr.App., 348 So.2d 512
(1977); McLendon v. State, Ala.Cr.App., 341 So.2d 174 (1976).
We have carefully examined the record in this cause and find no error in the proceedings below; therefore, the judgment is due to be and is
AFFIRMED.
All the Judges concur. *Page 857