Appellant was indicted by the Mobile County Grand Jury for the offense of robbery in the first degree. The jury returned a verdict of guilty as charged, and the trial court sentenced appellant to fifteen years' imprisonment. Because the sufficiency of the state's evidence to sustain the conviction is raised as an issue on appeal, we detail those facts which are sufficient to sustain the jury's verdict below.
The victim of the robbery, Charles Michael Boatwright, testified he owned and operated a flea market on Dauphin Island Parkway called "The Shop and Swap" on January 21, 1981. Shortly before closing time that day, two young black males entered the store and asked to see a television. Around 4:45 p.m., as Mr. Boatwright was occupied plugging in the set, a gun was placed against his side by appellant. He was told he was being held up and that he was not to move or get excited. The other assailant, who was unarmed, was instructed by appellant to empty the cash register while appellant went through Mr. Boatwright's pockets.
Appellant's accomplice was unable to open the cash register, so Mr. Boatwright was forced to open the drawer. After the money was taken from the register, Mr. Boatwright was instructed to walk toward the rear of the store. The two men fled the store as he began to walk. Out of the corner of his eye, Mr. Boatwright saw a part-time employee, Larry Garrett, drive up and he turned and yelled for him to stop *Page 945 
the two men. Before Mr. Garrett could react, the two men fled the scene in an automobile.
Mr. Boatwright talked by telephone with the police. They dispatched officers to his business, and the officers took the robbery report. Approximately fifteen to thirty minutes later, the police returned with two suspects. Mr. Boatwright was able to positively identify one of the suspects as the robber who had carried the gun. He did not recognize the other suspect. Boatwright then identified appellant in court as being the same man he had identified that day to the police.
Larry Garrett, a former employee of Mr. Boatwright, testified that when he arrived at "The Shop and Swap" on January 21, 1981, he saw two young black males run out the door and get into a large, older model green automobile. Hearing Mr. Boatwright's calls to stop them, Garrett took down the tag number of their vehicle, which he gave to the police. Subsequently, when the police returned with the suspects, he also was able to identify one of them as one of the men he saw fleeing the store.
Officer Gerard Bolton, Jr. of the Mobile Police Department testified he received a police report of a robbery at Mr. Boatwright's store around 5:00 p.m. on January 21, 1981. Included in the report was a tag number, vehicle description, and owner registration and address for the automobile involved in the robbery. Officer Bolton, upon learning the automobile had been located in the vicinity of the owner's residence, went to its location and then proceeded to the owner's residence.
While Officer Bolton was talking with the owner, Zack Williams, at his residence, Mr. Williams received a telephone call from his son, Eddie Williams, the appellant herein. Officer Bolton then followed Mr. Williams to a nearby location where he arrested the appellant.
Officer Bolton then took appellant and Mr. Williams to the robbery scene. He arrived at the store with the two men approximately twenty minutes after the robbery occurred. After viewing the two men, both Mr. Boatwright and Mr. Garrett identified one of the men as having been involved in the robbery. At that point, Officer Bolton placed appellant under arrest and gave him his Miranda warnings. He was taken to the Criminal Investigation Division of the police department, where he was again advised of his Miranda rights. After signing a waiver form, appellant gave a statement to police in which he admitted driving the automobile to the store for an acquaintance. However, he denied any participation in the robbery, stating that he remained in the automobile, and that he was not aware of his friend's intention to rob the store. When his friend exited the store, he drove him away. After parking the vehicle, both men ran off in different directions. Appellant then called his father from a friend's house and told him the car had been stolen. Shortly thereafter, his father arrived with a detective and he was taken to the robbery scene for identification.
The state rested at the close of Officer Bolton's testimony. Appellant's motion to exclude the state's evidence was denied.
Appellant testified on his own behalf and substantiated his earlier statement to police. However, at trial he testified that there had been three people, rather than two, involved in the robbery. He stated he had remained in the vehicle, while his friend and an unknown cousin of his friend robbed the store. He again denied any knowledge of their intention to rob the store.
On rebuttal for the state, Larry Garrett testified he observed only two men running to the vehicle at the time of the robbery. They both entered the front seat, one on the passenger side and one on the driver's side. He saw no one in the rear seat of the automobile.
Appellant argues that the state's proof failed to establish that the appellant or his accomplice actually took or attempted to take any property from Mr. Boatwright during the encounter at Mr. Boatwright's business. Appellant states in brief that the record reflects that ". . . at no time did the State prove that Edward Williams or anyone *Page 946 
acting within concert with him [took] any property from anyone and therefore [he] cannot be guilty of robbery." We find appellant's argument to be both factually and legally without merit.
During direct examination by the state, Mr. Boatwright testified as follows:
 "Q All right. Did you go up and open the cash register?
"A Yes, I did.
"Q And was there any money in the cash register?
"A Yes, there was.
"Q Do you know how much money?
 "A I'd say somewhere around forty-five dollars — that I was really sure of.
. . . .
 "Q Okay. What happened after they got all this money out of the cash register?
"A They told me to walk —"
On cross-examination by appellant's counsel, Mr. Boatwright testified further as follows:
 "Q Okay. And they took some money out of the cash register, you say?
"A Right.
"Q Which one took the money out of the cash register?
 "A Let me see, at that time they were both there, so, I think it was the one closest to me with the gun reached in there got the drawer — slipped the thing out and then just poured it into a bag or something. I don't remember what it was poured into. But I remember some of the change went over the floor.
 "Q You don't remember which one took the money out of the cash register?
"A I believe it was the one with the gun.
 "Q If you don't recall, say you don't recall. If you recall, say which one he was.
"A I'll have to say I'm not really sure then.
 "Q Okay. That's all. And do you recall exactly how much money?
"A It was around forty-five dollars."
As the quotes from the record indicate, the state presented adequate testimony by the victim at trial to furnish sufficient evidence of the elements of the crime charged and to sustain the jury's verdict of guilty. Pickett v. State, 417 So.2d 589
(Ala.Crim.App. 1982).
We point out as well, that robbery in the first degree, as set forth in §§ 13A-8-40, 13A-8-41, and 13A-8-43, Code of Alabama 1975, embraces acts which occur in the "attempt to commit" theft, as well as in the actual commission of theft. Therefore, it was not necessary that the state prove that property was actually taken by the appellant during any attempted theft, where the state's proof otherwise met the statutory requirements of §§ 13A-8-40, 13A-8-41, and 13A-8-43, Code of Alabama 1975. See, Marvin v. State, 407 So.2d 576
(Ala.Cr.App. 1981); Petty v. State, 414 So.2d 182 (Ala.Cr.App. 1982). See also, Commentary to Ala. Code §§ 13A-8-40 through13A-8-44 (1975).
Appellant's final contention is that his conviction must be reversed because the trial court failed to investigate and examine the appellant in determining whether he should be tried as a youthful offender. The record does not show, and the state does not contend in brief, that appellant was examined for youthful offender status by the court prior to the instant trial. Neither does the state deny that appellant was a minor at the time the crime was committed.
The state asserts, however, that the court's failure to act was harmless error because such an examination was conducted by the trial court pursuant to a prior indictment of appellant for this same offense. That indictment was nol-prossed after a reindictment of appellant for the same offense was returned. A supplemental record submitted by the state, consisting of the case action summary sheets and the minute entries, is the only reflection of those preceding events. The trial court's actions are reflected therein as follows:
 "3/18/82 Defendant waived trial by jury and requested to be treated as a Youthful *Page 947 
Offender-Defendant's oral request to be treated as a Youthful offender — Denied — Defendant waived reading of indictment and plead not guilty — Defendant's attorney, Robert Clark, in court — -/4/82 Case crowded out — Defendant's attorney, Robert Clark, in court.
 6/17/82 A Re-Indictment having been returned on defendant; It is ordered and adjudged by the court that this case be and the same is hereby Nolle Prossed — Defendant's attorney, Robert Clark, in court.
. . . .
 "This day in open court came the State of Alabama by its District Attorney and the defendant in his own proper person and with his attorney, Robert Clark, and the defendant in open court on this day waived trial by jury and requested to be treated as a Youthful Offender.
 "And thereupon in open court on this day; It is ordered and adjudged by the court that the defendant's request to be treated as a Youthful Offender be and the same is hereby denied.
 "And the defendant in open court on this day waived reading of the indictment in this case charging him with the offense of Robbery First Degree and plead not guilty.
 "Thereupon in open court on this day, defendant's attorney, Robert Clark, was in court."
A report of a pre-sentence investigation of appellant is also included in the supplemental record. However, the record reflects the report was not ordered until July 1, 1982. The report is dated July 23, 1982, some four months after youthful offender status had been denied by the trial court on March 18, 1982. See Carthon v. State, 419 So.2d 293 (Ala.Cr.App. 1982);Reese v. State, 381 So.2d 107 (Ala.Cr.App. 1980) (trial judge aware of report and contents prior to determination).
Whether the trial judge's failure to call the youthful offender act to the attention of the minor appellant and allow him to waive trial by jury and consent to an investigation was harmless error because of the prior proceeding under the original indictment need not be decided per se. The record and supplemental transcript do not reflect that at any time during any of the proceedings "some investigation, examination, or inquiry was had of the defendant before the request was denied." Watkins v. State, 357 So.2d 156, 161 (Ala.Cr.App. 1977), cert. denied, 357 So.2d 161 (Ala. 1978). This court will not overturn the trial court's exercise of discretion in denying youthful offender status except where it affirmatively appears that the decision was made without some examination or investigation of the youthful offender. Morgan v. State,363 So.2d 1013 (Ala.Cr.App. 1978). However, under the facts reflected by the record herein, we find it necessary to remand the case for further determination. The record reflects no examination of appellant by the trial judge who denied the motion. It affirmatively establishes that the only investigation shown to have been conducted was ordered by a different trial judge from the one who denied the motion. This subsequently conducted investigative report was not admitted until four months after the determination to deny youthful offender status to appellant had been made by the first judge. The judge who actually reviewed the investigative report on appellant never ruled on youthful offender status in any fashion.
Accordingly, this case is remanded to the trial court with instructions, as set forth in Prince v. State, 392 So.2d 853
(Ala.Crim.App. 1980), cert. denied, 392 So.2d 857 (Ala. 1981), to investigate and examine the appellant at a hearing and determine whether, in its discretion, the appellant should be tried as a youthful offender. Watkins, supra; Edwards v. State,294 Ala. 358, 317 So.2d 512 (1975).
REMANDED WITH DIRECTIONS.
All the Judges concur.
 ON RETURN TO REMAND